## Benjamin Franklin's Estate.  Gillespie's Appeal.
[Marked to be reported.]

150    437
19 SC  554

*Trusts—Municipal corporations—Jurisdiction of orphans' court.*

Where a municipal corporation receives a legacy upon trusts which are invalid, the fund is not impressed, in the hands of the corporation, with such a trust in favor of the testator's representatives as renders the corporation liable to account to them in the orphans' court.

*Municipal corporation—Private resulting trusts.*

In the absence of an express grant of power to accept and administer purely private trusts, a municipal corporation cannot do so. That the trust in question is a resulting trust, implied independently of the intention of donor and trustee, does not militate against this proposition. The policy of the law may not be defeated by a fiction invented to prevent a failure of justice.

*Rule against perpetuities—Accumulations—Charities.*

Not decided whether an accumulation for terms in gross of one and two hundred years in favor of young married artificers, and gifts over to a city and a state on charitable and non-charitable uses, are or are not valid.

Argued March 25, 1892.      Appeal, No. 16, July T., 1891, by petitioners, from decree of O. C. Phila. Co., July T., 1890, No. 214, sustaining the city's demurrers to appellant's petitions for citation.      Before Paxson, C. J., Sterrett, Green, Williams, McCollum, Mitchell and Heydrick, JJ.

The petitions of Elizabeth D. Gillespie and Albert D. Bache set forth that Benjamin Franklin died, domiciled in the city of Phila., on April 17, 1790, leaving a will dated July 17, 1788, and a codicil thereto dated June 23, 1789, which, on April 23, 1790, were duly probated. By the codicil the testator made the following provisions :

" It having long been a fixed political opinion of mine, that, in a democratical state, there ought to be no offices of profit, for the reasons I had given in an article of my drawing in our Constitution, it was my intention when I accepted the office of President, to devote the appointed salary to some public uses. Accordingly, I had already, before I made my will in July last, given large sums of it to colleges, schools, building of churches, etc.; and in that will I bequeathed two thousand pounds more to the state for the purpose of making the Schuylkill navigable. But, understanding since, that such a sum will do but little towards accomplishing such a work, and that the project is not likely to be undertaken for many years to come, and having entertained another idea, that I hope may be more extensively useful, I do hereby revoke and annul that bequest, and direct that the certificates that I have for what remains due to me of that salary be sold, towards raising the sum of two thousand pounds sterling, to be disposed of as I am now about to order. . . . .

" I have considered that, among artisans, good apprentices are most likely to make good citizens, and, having myself been bred to a manual art, printing, in my native town, and afterwards assisted to set up my business in Philadelphia, by kind loans of money from two friends there, which was the foundation of my fortune, and of all the utility in life that

may be ascribed to me, I wish to be useful even after my death, if possible, informing and advancing other young men, that may be serviceable to their country in both those towns. To this end I devote two thousand pounds sterling, of which I give one thousand thereof to the inhabitants of the town of Boston, in Massachusetts, and the other thousand to the inhabitants of the city of Philadelphia, in trust, to and for the uses, intents and purposes hereinafter mentioned and declared.

" The said sum of one thousand pounds sterling, if accepted by the inhabitants of the town of Boston, shall be managed under the direction of the selectmen, united with the ministers of the oldest Episcopalian, Congregational and Presbyterian churches in that town, who are to let out the same upon interest, at five per cent per annum, to such young married artificers, under the age of twenty-five years, as have served an apprenticeship in the said town, and faithfully fulfilled the duties required in their indentures, so as to obtain a good moral character from at least two respectable citizens, who are willing to become their sureties, in a bond with the applicants, for the repayment of the moneys so lent, with interest, according to the terms hereinafter prescribed ; all of which bonds are to be taken for Spanish milled dollars, or the value thereof in current gold coin; and the managers shall keep a bound book or books, wherein shall be entered the names of those who shall apply for and receive the benefits of this institution, and of their sureties, together with the sums lent, the dates, and other necessary and proper record respecting the business and concerns of this institution. And, as these loans are intended to assist young married artificers in setting up their business, they are to be proportioned by the discretion of the managers, so as not to exceed sixty pounds sterling to one person, nor to be less than fifteen pounds, and, if the number of appliers so entitled should be so large that the sum will not suffice to afford to each as much as might otherwise not be improper, the proportion to each shall be diminished so as to afford to every one some assistance. These aids may, therefore, be small at first, but, as the capital increases by the accumulated interest, they will be more ample. And, in order to serve as many as possible in their turn, as well as to make the repay-

ment of the principal borrowed more easy, each borrower shall be obliged to pay, with the yearly interest, one-tenth part of the principal, which sums of principal and interest so paid in, shall be again let out to fresh borrowers.

"And, as it is presumed that there will always be found in Boston virtuous and benevolent citizens willing to bestow a part of their time in doing good to the rising generation, by superintending and managing this institution gratis, it is hoped, that no part of the money will at any time be dead, or be diverted to other purposes, but be continually augmenting by the interest, in which case there may, in time, be more than the occasions in Boston shall require, and then some may be spared to the neighboring or other towns in the said state of Massachusetts, who may desire to have it; such towns engaging to pay punctually the interest and the portions of the principal, annually, to the inhabitants of the town of Boston.

"If this plan is executed, and succeeds as projected without interruption for one hundred years, the sum will then be one hundred and thirty-one thousand pounds, of which I would have the managers of the donation to the town of Boston then lay out, at their discretion, one hundred thousand pounds in public works, which may be judged of most general utility to the inhabitants, such as fortifications, bridges, aqueducts, public buildings, baths, pavements, or whatever may make living in the town more convenient to its people, and render it more agreeable to strangers resorting thither for health or a temporary residence. The remaining thirty-one thousand pounds I would have continued to be let out on interest, in the manner above directed, for another hundred years, as I hope that it will have been found that the institution has had a good effect on the conduct of youth, and been of service to many worthy characters and useful citizens. At the end of this second term, if no unfortunate accident has prevented the operation, the sum will be four millions and sixty-one thousand pounds sterling, of which I leave one million sixty-one thousand pounds to the disposition of the inhabitants of the town of Boston, and three millions to the disposition of the government of the state, not presuming to carry my views farther.

"All the directions herein given respecting the disposition and management of the donation to the inhabitants of Boston, I

would have observed respecting that to the inhabitants of Philadelphia, only, as Philadelphia is incorporated, I request the corporation of that city to undertake the management agreeably to the said direction, and I do hereby vest them with full and ample powers for that purpose. And having considered that the covering a ground plat with buildings and pavements, which carry off most of the rain, and prevent its soaking into the earth and renewing and purifying the springs, whence the waters of the wells must gradually grow worse, and in time be unfit for use, as I find has happened in all old cities, I recommend that at the end of the first hundred years, if not done before, the corporation of the city employ a part of the one hundred thousand pounds in bringing, by pipes, the water of Wissahickon creek into the town, so as to supply the inhabitants, which I apprehend may be done without great difficulty, the level of that peak being much above that of the city, and may be made higher by a dam. I also recommend making the Schuylkill completely navigable. At the end of the second hundred years I would have the disposition of the four million and sixty-one thousand pounds divided between the inhabitants of the city of Philadelphia and the government of Pennsylvania, in the same manner as herein directed with respect to that of the inhabitants of Boston and the government of Massachusetts.

" It is my desire that this institution should take place and begin to operate within one year after my decease, for which purpose due notice should be publicly given previous to the expiration of that year, that those for whose benefit this establishment is intended may make their respective applications. And I hereby direct my executors, the survivors or survivor of them, within six months after my decease, to pay over the said sum of two thousand pounds sterling to such persons as shall be duly appointed by the selectmen of Boston and the corporation of Philadelphia to receive and take charge of their respective sums, of one thousand pounds each, for the purposes aforesaid.

" Considering the accidents to which all human affairs and projects are subject in such a length of time, I have, perhaps, too much flattered myself with a vain fancy that these dispositions, if carried into execution, will be continued without in-

terruption and have the effects proposed. I hope, however, that if the inhabitants of the two cities should not think fit to undertake the execution, they will, at least, accept the offer of these donations as a mark of my good will, a token of my gratitude, and a testimony of my earnest desire to be useful to them after my departure. I wish, indeed, that they may both undertake to endeavor the execution of the project, because I think that, though unforeseen difficulties may arise, expedients will be found to remove them, and the scheme be found practicable. If one of them accepts the money, with the conditions, and the other refuses, my will then is that both sums be given to the inhabitants of the city accepting the whole, to be applied to the same purposes, and under the same regulations directed for the separate parts; and, if both refuse, the money, of course, remains in the mass of my estate and is to be disposed of therewith according to my will made the seventeenth day of July, 1788."

The petitions further alleged that testator's residuary legatees were Richard and Sarah Bache, and deduced the title of Albert D. Bache, one of the petitioners, as their great-grandson and as claimant through intermediate wills. The petitions set forth the payment of the above-mentioned sum of $1,000 to the city; averred that the said sum and its accretions had even since been held by the city as trustee; recited the grant of letters *c. t. a.* on Franklin's estate to the other petitioner, Elizabeth D. Gillespie; charged that less than one sixth of the sum anticipated by the testator had been realized, owing to the negligence of the trustee; and averred that the provisions of the codicil were void for the following among other reasons: (*a*) Because an accumulation is hereby directed for a longer period than is allowed by the common law of this state. (*b*) Because the legacy to the city and state vests at a period after the testator's death beyond that which is allowed for the vesting of any legacy or devise by the law of this state. (*c*) Because the use of the said funds during the first hundred years after the testator's death is not a charitable use and is not one which is allowed by law. (*d*) Because the purpose contemplated by the testator has become impossible on account of the dereliction and negligence of the trustees in not realizing the anticipated sum. There was the further aver-

ment that, in consequence of this invalidity, the fund was due and payable to the petitioners for distribution among the persons entitled; and, after setting forth that the fund is at present held under the Act of June 30, 1869, by the board of city trusts, the petitions concluded with prayers as follows: That a citation may issue to the mayor of the city of Philadelphia and to the president and members of the board of city trusts, directing them (1) to answer the averments of this petition; (2) to file an account of the said fund and to hold the same subject to the decree of this court; (3) to make no disposition of the fund in violation of petitioners' rights, and (4) further relief.

The city, as trustee under the will of Benjamin Franklin, through its agents, the board of city trusts, demurred to the petitions, assigning *inter alia* the following reasons: That the claim of Richard Bache was barred by the lapse of more than twenty-one years between the death of Benjamin Franklin and the death of Richard Bache, and if the latter was barred then the petitioners are barred; that the petitioner was not lawfully entitled to sue as administratrix, because letters of administration were unlawfully granted by the register of wills; that the petitioners are not entitled to the relief claimed; and that the orphans' court lacks jurisdiction.

The orphans' court sustained the demurrers and dismissed the petitions, in an opinion by PENROSE, J., 27 W. N. 545, 48 Leg. Int. 136, whereupon the petitioners appealed.

*Errors assigned* were (1) sustaining demurrer, and (2) not overruling them.

*Russell Duane, George Wharton Pepper*, and *John Chipman Gray* of Massachusetts, for appellants.—I. The gifts to the city and to the state were not vested and, since the vesting was postponed to a period too remote, the testator's dispositions were invalidated by the rule against perpetuities. The question is, therefore, whether those gifts were, at the testator's death, vested or not vested.

(1) The term "vested" is sometimes used to mean "transmissible," but, as far as questions of remoteness are concerned, an estate is vested when it is prevented from coming into possession only by the existence of preceding estates. It is not

opposed to "contingent:" a disposition may be vitiated by the rule although there is no contingency about it: 1 Smith, R. & P. Prop., §§ 818, 831; Williams, R. Prop., 13th ed., 255; Fearne Cont. R. 401, Butler's notes; Smith, Exec. Int., §§ 78, 78a, 80, 85; Marsden, 41, 43, 44.

(2) The question is one of *intention ;* did Franklin intend to postpone the gifts to city and state only because he desired to benefit the artisans first; or, independently of his intentions in favor of the artisans, had he reasons for directing the gifts to take effect at the end of one hundred and two hundred years? Did he intend to make a present or a future gift? In the first paragraph of his codicil he explicitly declares that he intends to make a future gift.

It is clear therefore that the equitable interest is future, or not vested, and that the city takes only the bare legal title. The testator excludes it from taking beneficially by assimilating its status to that of the Boston ministers. It is obvious that they are not *cestuis que trustent.* The orphans' court erred in saying that "the beneficiary was itself the trustee." Equitable interests are as much subject to the rule against perpetuities as legal; and it makes no difference that the future use is charitable: Company of Pewterers v. Christ's Hospital, 1 Vern. 161.

(3) The details of his scheme reveal such an intention, as appears from the following propositions:

(*a*) Where there is a direction to accumulate and a gift of the accumulated fund, the vesting of the gift is postponed to await the result of the accumulation:. Oddie v. Brown, 4 De G. & J. 179.

(*b*) The orphans' court decided that if in 1890 the accumulation exceeded £100,000 the state would have an interest in excess; but not otherwise. There can be no vesting of interests until it is determined whether the state takes anything, and, if so, how much. But this, the orphans' court admits, could not be done for one hundred years: Curtis v. Lukin, 5 Beav. 147.

(*c*) A limitation of personalty vests in interest only when it vests in possession: Marsden, Perp., p. 44: Pearks v. Moseley, L. R. 5 Ap. Cas. 721; 6 Law Quart. Rev. 427; Biddle's Ap., 99 Pa. 532.

(4) Where a fund is set apart for a charitable purpose which may be too remote, the gift will sometimes be construed *cy pres*—and yet avoiding the objection of perpetuity. In other words, the time of the gift can be changed, if doing so would not interfere with the substance of the gift, nor with the other intentions of the testator. The question therefore is: Would a payment at Dr. Franklin's death to the city to be at once employed to introduce water and render the Schuylkill completely navigable, and of a further sum to be at the disposition of the inhabitants, and a further sum to the commonwealth, have been a substantial performance of his charitable devise for public works, and consistent with his other intentions as shown in his will?

(5) Whether the loan system for artisans is a charity or not is immaterial to appellants' case.

(a) It is not a charity but merely a mode of raising money for the testator's disposition. The fact that he leases the accumulation to charity is irrelevant. Suppose he had given it to individuals. It is no more a charity than a bank is a charity: Hillyard v Miller, 10 Pa. 337; Phila. v. Girard, 45 Pa. 29; Boyd v. Ins. Patrol, 113 Pa. 269.

(b) Assuming it to be a charity, the ill-considered decision in Christ's Hospital v. Grainger, 16 Sim. 83, is not law in Pennsylvania. Hillyard v. Miller, 10 Pa. 337, recognizes the invalidity of a remote gift over after a charitable use, as does Phila. v. Girard's Heirs, 45 Pa. 29. Even if it were law, it is not a precedent, for the illegal accumulation in the present case differentiates it from that. Thus, in any event, an interest rests at a period that is too remote, and, in consequence, the rule against perpetuities invalidates the entire disposition.

II. The petitioners are not barred by the statute of limitations or by laches.

(1) The statute has no application to a resulting trust in personalty arising from the invalidity of a testamentary gift.

(2) Such a trust, being an express trust under Lord Cairns' definition in Cunningham v. Foot, 3 Ap. C. 984, is not barred by any equitable rule based upon an analogy to the statute of limitations: Finney v. Cochrane, 1 W. & S. 112; Barton v. Dickens, 48 Pa. 518; Salber v. Cavanagh, 1 Dru. & Wal. 668

Patrick v. Simpson, L. R. 24 Q. B. D. 128; Potter and Paige's
Estate, 54 Pa. 465. Nor does it matter that the identity of
the *cestui que trust* is in dispute : the trustee holds for the bene-
ficiary who is in point of law entitled : Lister v. Pickford, 34
Beav. 576 ; Bullock v. Downes, 6 H. L. Cas. 1.

(3) The petitioners are not barred by laches because (*a*) their
delay has not caused the position of the defendants to be altered
for the worse, and (*b*) all the evidence is in existence and readily
accessible which is necessary to determine their rights.   That
without at least one of these elements there can be no laches
is seen from Lewin on Trusts, § 873 ; Archbold v. Scully, 9 H.
L. C. 383 ; Daggers v. Van Dyck, 37 N. J. Eq. 137; Ash-
hurst's Ap., 60 Pa. 315 ; Evans' Ap., 81 Pa. 278 ; Wollaston,
v. Tribe, L. R. 9 Eq. 44; Ridgway v. Newstead, 3 D. F. & J.
474 ; U. S. v. Alexandria, 19 Fed. Rep. 609; Dickenson v. Ld.
Holland, 2 Beav. 310; Pickering v. Ld. Stamford, 2 Ves. Jr.
272; Thorndike v. Loring, 15 Gray, 391 ; and Browne v. Rad-
ford, W. N. (of London, 1874) 124, in which case a delay of
one hundred and four years was held to be no bar.

(4) The orphans' court decided that the city, having ad-
ministered the trust gratuitously for many years in expectation
of taking beneficially, became a purchaser for value whose
rights could not now be disturbed.   But (*a*) it was not the
intention of the testator that the city should take this gift as a
substitute for commissions ; (*b*) even if the city as trustee is
entitled to compensation, it may be awarded out of the fund
to an amount which would equal the commissions usually al-
lowed to trustees under such a trust; (*c*) which in this case
would amount to nothing, as the trustee through negligence
has realized much less than contemplated by the testator.

III. The orphans' court had jurisdiction to hear and deter-
mine this case.   See § 19, Act June 16, 1836, P. L. 792 ; Wim-
mer's Ap., 1 Wh. 96 ; Brown's Ap., 12 Pa. 333; Dundas's
Ap., 64 Pa. 330 ; Odd Fellow's Bank's Ap., 123 Pa. 356.


*F. Carroll Brewster, Francis E. Brewster* with him, for
appellee.—I. The bequest to the city for the benefit of "young
married artificers," at a reduced rate of interest, during the
first one hundred years after the testator's death, is a charitable
use : Coventry v. Atty. Gen., 7 Brown's Par. Cases, 235 ; Wit-

man v. Lex, 17 S. & R. 88; Griffin v. Graham, 1 Hawks (N. C.) 96; State v. Gerard, 2 Iredell Eq. (N. C.) 210; McDonogh's Exrs. v. Murdoch, 15 How. 367; Perin v. Carey, 24 How. 465; Magill v. Brown, Bright. 346: Cresson's Ap., 30 Pa. 450; Price v. Maxwell, 28 Pa. 35; 2 Roper, Legacies, 101; Pickering v. Shotwell, 10 Pa. 23; Vidal v. Girard's Exrs., 2 How. 189, and schedules of cases printed in the report of that decision. At the expiration of that time an unquestionable charitable use was provided for, viz., the improvement of the water supply, etc. Hillyard v. Miller, 10 Pa. 326, could have been decided otherwise under the case first above cited. City v. Girard's Heirs, 45 Pa. 29 does not apply to a trust under terms as stated above.

II. There was a present vested gift of £1,000 by testator to the city upon its acceptance thereof with the condition attached, viz.: that the funds should be invested and loaned out to "young married artificers" during the first one hundred years after the testator's death, and then the gift with its accumulations to be devoted to the charitable use as to water supply, etc.: Barton v. Cooke, 5 Ves. 463; Knox v. Hotham, 15 Sim. 82; Beck's Ap., 46 Pa. 527; Lassence v. Tierney, 1 Macn. & Gord. 551; Kellett v. Kellett, L. R. 3 H. L. 160; City v. Girard, 45 Pa. 9; Gray, Perp., §§ 607, 678; Odell v. Odell, 10 Allen, 1; Williams v. Williams, 4 Seld. 537; Jee v. Audley, 1 Cox Ch. 324. The gift cannot fail for it vested in the city on testator's death, with a direction to invest as a condition attached.

III. Appellants are barred by the lapse of time from attacking the trust and claiming the fund: Neely's Ap., 85 Pa. 387; Barnholt v. Ulrich, 11 W. N. 51; Todd's Ap., 24 Pa. 429; Hamilton v. Hamilton, 18 Pa. 20; Ashhurst's Ap., 60 Pa. 290; Fricke v. Magee, 38 Leg. Int. 139; Bickel's Ap., 86 Pa. 204; Irwin v. Cooper, 92 Pa. 298; Stackhouse v. Barnston, 10 Ves. Jr. 453; Townshend v. Townshend, 1 Cox, 67; Hasell's Case, 3 You. and C. 617; 3 Jur. 1101; Shewen v. Vanderhorst, 1 Russ. & Mylne, 347; Berrington v. Evans, 1 Y. & C. 434; Fyson v. Pole, 3 Y. &. C. 266; 3 Jur. 122; Watson v. Birch, 15 Sims. 523; 11 Jur. 198; 16 L. J. Ch. 188; Rocke v. Cooke, 12 Jur. 5; 17 L. J. Ch. 93; 1 De G. & S. 675; Attorney General v. Fishmonger's Co., 5 M. & C. 11; Preston's Will, 2 Beav. 588; Simmons v. Rudall, 1 Sim. N. S. 115; 15 Jur. 162; 2 Dan. Ch. Pr. § 43; Gregor v. Molesworth, 2 Ves. Sr. 109; 2

Dan. Ch. Pr., Ibid.; Foster v. Hodgson, 19 Ves. Jr. 180; Hoare v. Peck, 6 Sim. 51; Bull v. Towson, 4 W. & S. 557; Bones' Ap., 27 Pa. 492; Brewster v. Brewster, 3 Phila. 355; Girard Bank v. Bank, 39 Pa. 92; Chorpenning's Ap., 32 Pa. 315; Hassler v. Bitting, 40 Pa. 68; 1 Story's Eq. 237; Moth v. Atwood, 5 Ves. 845; Hovenden v. Lord Annesley, 2 Sch. & Lef. 636; Cholmondelly v. Clinton, 2 Jac. & Walker, 141; Champion v. Rigby, 1 Russ. & Mylne, 539; Roberts v. Tunstall, 4 Hare, 257; Elmendorf v. Taylor, 10 Wheat. 152; McKnight v. Taylor, 1 How. 161; Bowman v. Wathen, 1 How. 189; Prevost v. Gratz, 6 Wheat. 481; Wagner v. Baird, 7 How. 234; Foulk v. Brown, 2 Watts 209; Bull v. Towson, 4 W. & S. 569; Lyons v. Marclay, 1 Watts, 275. If the bequest is now invalid it was when the executors paid it over to the city. The residuary legatees made no objections and are guilty of laches.

IV. The orphans' court had no jurisdiction: Wimmer's Ap., 1 Wh. 96; Act of June 16, 1836, P. L. 792; Brinker v. Brinker, 7 Pa. 53; Fretz's Ap., 4 W. & S. 433; Willard's Ap., 65 Pa. 265; Harrisburg Bank's Ap., 84 Pa. 380; Ditsche's Est., 13 Phila. 288; Walter's Ap., 95 Pa. 305. The proceedings in the court below did not involve the distribution of the estate of Benjamin Franklin. Nor were they instituted for the recovery of a legacy. The executors might have raised the question of the validity of the legacy before paying it; but such a question cannot be raised after the lapse of a hundred years by the parties who appear upon the record as petitioners. One of these proceedings is a claim by an administratrix *c. t. a.* to recover from a living legatee the return of the legacy; the other, a claim by the heir of a residuary legatee upon another living legatee for the return of a legacy paid, as is contended improperly, under a void bequest. If the ancestor of the appellant Bache received from the executors of Franklin less than he ought to have received by reason of an improper payment to the city, appellant should look for redress to the executors or to their estates.

OPINION BY MR. JUSTICE HEYDRICK, July 13, 1892.

The ground upon which the appellants invoked the jurisdiction of the orphans' court was that the city of Philadelphia, having received a legacy from the executors of Dr. Franklin

under a void bequest, a trust thereupon resulted in favor of his residuary legatees as to the money so received, of which the city, *ipso facto*, became trustee, and, as such, subject to the jurisdiction of that court. It is not denied that the city received the legacy upon the trusts declared in the will of Dr. Franklin, and it may be admitted for the present purpose that the trust for accumulation was illegal, and the bequest for that reason void. It does not, however, necessarily follow that the fund was impressed, in the hands of the city, with a trust in favor of the residuary legatees or the legal representatives of the testator, or that the city, in virtue of its acceptance of it, became a trustee for the appellants, and, as such, liable to account to them in the orphans' court. The relation of trustee and *cestui que trust* involves duties, obligations and liabilities upon the one side as well as rights upon the other, and therefore it is that the question whether that relation has been established must depend primarily upon a question of capacity or passive power to accept the trust and assume the obligations inseparable from it. Accordingly it has been laid down generally that a trustee should be a person capable of taking and holding the legal estate and possessed of natural capacity and legal ability to execute the trust : 1 Lewin, Trusts, c. 3, § 2. If the city of Philadelphia had not capacity to take the fund and administer it for the benefit of the residuary legatees of Dr. Franklin, it could not, and never did, become their trustee in respect to it. A municipal corporation, like a private corporation, is a legal entity, existing only in contemplation of law and in virtue of law. Being the creature of law, it can have only those capacities which are imparted, and exercise only those powers which are expressly or by necessary implication granted to it. Its objects being governmental, its appropriate functions are all necessarily governmental. In the absence therefore of an express grant of power to accept and hold property upon purely private trusts, and to execute such trusts, it can no more do so than can a nonentity. Indeed, as to everything *dehors* its legitimate field of operations, it is as if it were not. Instances are not wanting in which municipal corporations have executed trusts committed to them by private persons, but these have been for public purposes, germane to the objects of the corporation, and they have been upheld

for that reason. Commenting upon Gloucester v. Osborn, 1 H. L. *272, in which it was said that a municipality may take and hold for purposes altogether private, SHARSWOOD, J., said in Philadelphia v. Fox, 64 Pa. 169: "But the administration of such trusts, and the consequent liabilities incurred, are altogether inconsistent with the public duties imposed upon the municipality. It could hardly be pretended, I think, in this country, that it could be a trustee for the separate use of a married woman to educate the children of a donor or testator, or to accumulate for the benefit of particular persons. It certainly is not compellable to execute such trusts, nor does it seem competent to accept and administer them." The same thought was evidently in the mind of the court in Mayor v. Elliott, 3 Rawle, 170.

It has not been shown that the city of Philadelphia was expressly authorized by its charter to accept and administer trusts for other than public purposes, germane to the objects for which it was created; and as its agents could not commit it beyond the scope of its powers, which is necessarily the utmost limit of their powers, it follows that when they received the legacy from Dr. Franklin's executors they did not thereby and for it accept a trust in favor of the residuary legatees. That a resulting trust and the consequent duties of the trustee are not necessarily dependent upon the intention of either the donor or trustee, but may be implied independently of and contrary to both, does not militate against this proposition. Where a trust is implied contrary to intention, as would be the case here, the implication is a fiction of the law invented to prevent a failure of justice. But the law will not resort to a fiction that will defeat its own policy by converting into a trustee a municipal corporation from which it has, for the public good, withheld capacity to accept and administer the trust. The relation of trustee and *cestui que trust* never having been established between the city of Philadelphia and the residuary legatees, it follows that the orphans' court has not jurisdiction to compel the former to account to the latter. This view renders it unnecessary to consider the other questions which were argued with great ability and learning by the counsel of the respective parties.

The decree of the court below dismissing the appellants' petition is affirmed.