*Error assigned* was refusal of point as above.

*H. M. North*, with him *A. C. Reinoehl*, for appellant.

*H. M. Houser* and *John W. Appel*, of *Appel & Appel*, for appellee.

PER CURIAM, July 17, 1901 :

The plaintiff asked the court to decline to submit the case to the jury but to reinstate the judgment with full force and effect, less amount realized at the sheriff's sale, to wit: $58.77. The court refused this point. The judgment was opened by the court on testimony deemed sufficient, and the trial resulted in a verdict for the plaintiff in the sum of $158.67. We cannot say that it was error to open the judgment and we therefore affirm it.

Judgment affirmed.

---

## Stevens's Estate.

*Trusts and trustees—Charitable use not to fail for want of a trustee—Act of May 23, 1895, P. L. 114—Will.*

Where a testator directs that after the expiration of a life estate, a certain fund shall be used by his trustees for the establishment of an orphan asylum, and all of the trustees die before any steps are taken to establish the asylum, and a substituted trustee is appointed in their place, and hereafter a corporation is organized by reputable persons, not however, connected in any way with the estate, for the purpose of carrying out the trust created by the will, the orphans' court may direct the substituted trustee, who does not object, to pay over the whole fund to the corporation, to carry out the purpose of testator.

Argued May 22, 1901. Appeal, No. 72, Jan. T., 1901, by the Lancaster Trust Company, from decree of O. C. Lancaster Co., directing payment of a trust fund to a trustee in the estate of Thaddeus Stevens, deceased. Before McCOLLUM, C. J., MITCHELL, FELL, MESTREZAT and POTTER, JJ. Affirmed.

Rule to show cause why the Lancaster Trust Company,

trustee, should not pay over a certain trust fund in its posses-
sion to the Stevens Orphans' Home of Lancaster City.

LANDIS, J., filed the following opinion :

Thaddeus Stevens died August 14, 1868. By his will he
provided that, " if the life estate of my nephew, or rather the
annuity of the said Capt. Thaddeus Stevens, of Pennsylvania,
should expire before he has enabled himself to become entitled
to the corpus or fee simple of my estate, then I dispose of
whatever may remain, as follows : If the aggregate sum shall
then amount to fifty thousand dollars, without which no further
disposition thereof can be made, I give it all to my trustees to
erect, establish and endow a house of refuge for the relief of the
homeless, indigent orphans. Those shall be deemed orphans
who shall have lost either parent. I desire twenty thousand
dollars to be expended in erecting suitable buildings, the residue
to be secured in government securities, bearing not less than
six per cent per annum interest. I wish the building to be
erected in the City of Lancaster, south of East King Street, pro-
vided sufficient ground, not less than two acres, shall be donated
therefor; if not, on the north side of said street on the same
conditions. If sufficient shall not be gratuitously offered, then
I desire it to be built at Columbia. The orphans who cannot
be bound out may remain in the institution until the age of
fifteen years, and longer if infirm, at the discretion of the au-
thorities. They shall all be carefully educated in the various
branches of English education and all industrial trades and pur-
suits. This must be left to the discretion of the authorities.
No preference shall be shown on account of race or color in the
admission or treatment. Neither poor German, Irish or Mo-
hammedans, nor any others on account of their race, or the re-
ligion of their parents, must be excluded. All the inmates shall
be educated in the same classes and manner, without regard to
color. They shall be fed at the same table. The dormitories
to be under the direction of the authorities. The trustees
should procure an act of incorporation at some convenient time."

The testator appointed Anthony F. Roberts, O. J. Dickey
and Edward McPherson his executors and trustees. All of
these gentlemen are dead, and, upon the death of Mr. McPher-
son, the survivor, viz: on February 17, 1896, the Lancaster

Trust Company was appointed trustee under said will. Upon his decease, his administrators filed an account of the trust fund, and the balance, as then ascertained and paid over to the new trustee, was $55,686.05, less costs. This principal, with its accumulations, is now in the hands of said trust company, neither the executors, during their lives, nor the Lancaster Trust Company, since its appointment as trustee, having taken any measures towards carrying out the above recited provision of testator's will, although the home for friendless children of the city and county of Lancaster, prior to 1885, offered to donate to the said executors two acres of ground in the city of Lancaster, south of East King street, to carry out the terms of said trust, and the same offer was subsequently made to the Lancaster Trust Company as trustee.

Anticipating the granting of their charter, and in accordance with the act of assembly, certain citizens, on December 31, 1898, by leave of Henry C. McCormick, attorney general of the commonwealth, presented their petition to this court, setting forth all of the above facts, and praying, first, " that the court, by its decrees, should carry into effect the intent of the testator so far as the same could be ascertained and carried into effect consistent with law or equity; second, that the court should order and direct the Lancaster Trust Company, trustee, to account for the trust funds and to pay over the same, together with all interest and accumulations thereon, to the Stevens Orphans' Home of Lancaster city, for the purpose of carrying out the provisions of the will of the deceased in reference to said trust; third, that the Lancaster Trust Company should be removed and discharged from the trust upon payment to said Stevens Orphans' Home of the trust fund and interest; and fourth, that a decree be entered that said trust fund be paid to the Stevens Orphans' Home as the persons entitled thereto, to erect, establish and endow a house of refuge for the relief of the homeless, indigent orphans, and to carry out the purposes of said trust according to the provisions of the will of said deceased." A rule was thereupon granted to show cause why the prayers of the petitioners should not be granted. On January 21, 1899, leave was given to the said petitioners to form an organization or association for the purposes proposed, and to become incorporated as aforesaid. On March 11, 1899, the Stevens Or-

phans' Home of Lancaster city was duly incorporated. It is not a corporation for profit. Its purposes, as set forth in its charter, are the " erecting, establishing and endowing a house of refuge for the relief of homeless, indigent orphans," according to the provisions of the will of the testator.

On July 5, 1900, the said Stevens Orphans' Home of Lancaster city presented its petition to the court, in which it suggested its incorporation, accompanied by a copy of its charter, and also, that the home for friendless children for the city and county of Lancaster had donated to it two acres of ground in the city of Lancaster, south of East King street, to meet the requirements of testator's will, a full description of said land, by metes and bounds, being set forth therein; and, on November 7, 1900, the Lancaster Trust Company, as trustee, made answer to the said petition and rule.

Admitting the organization and incorporation of the Stevens Orphans' Home, as set forth in the petition and suggestion, and also the provisions of the will of the testator, and that the original executors and testamentary trustees are all dead, it states that there was paid over to it the sum of $55,686.05, less fees and expenses of $101.50, leaving $55,584.55, and that said fund has increased in its hands by careful and judicious investment. It also admits that it has merely acted as custodian of the fund, and has taken no steps to erect, establish and endow a house of refuge as provided by said will, because it was advised that it had no right or authority to do so, and because it was not expedient for the trust that it should begin or undertake such erection, and it also avers that the sum in its hands was not sufficient to successfully establish and maintain the home contemplated by the testator, and that it is impossible to secure or invest the same in government securities bearing not less than six per cent per annum. It also avers that it is advised that it is not such a trustee as is contemplated by the testator to carry out the trust, but it expresses an entire willingness to have the intent of the testator, so far as it can be ascertained, carried into effect consistently with law and equity, and to that end, that it is willing, whenever the court shall so order and direct, to account for the trust funds and to pay over the same to any person or corporation whom the court may decide to be fully authorized, qualified and entitled to

carry out the provisions of testator's will in reference to the said trust.

Upon this presentation of fact and pleadings, is this court authorized to make the orders which are prayed for? The integrity of the trust has already been established by the Supreme Court in Stevens's Appeal, 164 Pa. 209, and the only point open for settlement is the manner in which it is to be carried out to effectuate the purposes and intentions of the testator.

The courts of Pennsylvania have looked with favor upon charities, and the law of the state, as administered from the beginning of this province, has always been broad enough to discern the objects of every charity and to preserve and enforce it, notwithstanding any defect, such as want of power in the trustees or otherwise : The Apprentices' Fund Case, 13 Pa. C. C. Rep. 241. Therefore, when a charity is established in any manner, such a slight impediment as a defect or want of power in the trustee to execute it does not stand in the way ; the charity remains ; the trustee is declared incapable of acting, and a competent trustee is appointed in his place. Chancery here steps in to enforce it and commits it to some one who may lawfully administer it: Frazier v. St. Luke's Church, 147 Pa. 256. While the statute of 43d Elizabeth is not here in force, the principles which the English chancery had adopted obtained with us as part of the common law. Before the year 1855 it was a clear and well settled rule, that even when the objects of the charity were uncertain, there must be held somewhere, in a competent trustee or trustees, the discretion absolutely necessary to carry them into effect by selecting those objects: Mann v. Mullin, 84 Pa. 297. But, by the provisions of the 10th section of that act, viz : the Act of April 26, 1855, P. L. 331, entitled, " An act relating to corporations and to estates held for corporate, religious and charitable uses," a remedy was supplied for future cases in which the donor or testator had omitted to vest such a discretion in a trustee or trustees, or it had failed to be effectual by the death or other disability of the person or persons whom he may have appointed. This act was amended by the Act of May 23, 1895, P. L. 114, which act is an exact copy of the act of 1855, except that the words, " corporations not for profit," are inserted in the body of the act, and the proviso is entirely new. The portion of the act which it is now important

to consider reads : " That no disposition of property, heretofore or hereafter made for any religious, charitable, literary or scientific use shall fail for want of a trustee, or by reason of the objects being indefinite, uncertain or ceasing, or depending upon the discretion of a last trustee, or by giving in perpetuity or in excess of the annual value heretofore limited ; but it shall be the duty of any orphans' court, or courts having equity jurisdiction in the proper county, to supply a trustee, and, by its decrees, to carry into effect the intent of the donor or testator, so far as the same can be ascertained and carried into effect consistently with law or equity, for which purpose the proceedings shall be instituted by leave of the attorney general of the commonwealth, on the relation of any institution, association, corporation not for profit, or individual, desirous of carrying such disposition into effect and willing to become responsible for the costs thereof," etc.

All of the cases, therefore, involving the construction of the act of 1855, are equally applicable to the act of 1895. Under these cases and the act of assembly, there would seem to be no doubt as to the power of the court, " by its decree, to carry into effect the intent of the donor or testator, so far as the same can be ascertained and carried into effect' consistently with law or equity."

In Croxall's Estate, 162 Pa. 579, a testatrix, by her will, gave " $1,000, to any institution in Philadelphia that would give shelter to homeless people at night, irrespective of creed, color or condition." The only claimant for the fund was the Philadelphia Society for Organizing Charity. The evidence showed that this society had established wayfarers' lodges, at which shelter had been provided and would continue to be provided, for homeless people at night, irrespective of creed, color or condition, and it was held that the claimant was entitled to the fund.

In Pepper's Estate, 154 Pa. 331, a testator gave " to the trustees of such free library which may be established in the city of Philadelphia, east of the river Schuylkill and south of Market Street, $150,000." The executors paid over the money to a corporation formed after testator's death ; although, at the time of the payment, it was not the owner of a library ; and the court concluded that the fund had been properly distributed. And-

in City of Philadelphia v. Girard's Heirs, 45 Pa. 9, and in other cases arising out of the same estate, both in our Supreme Court and the supreme court of the United States, every one is aware that the devise of the residue of his real and personal estate by Stephen Girard to the city of Philadelphia, in trust, to construct, constitute and maintain the institution known as Girard College, and then for certain municipal purposes, was sustained by all the courts of last resort.

In Murphy's Estate, 184 Pa. 310, the testator directed "the balance of my estate, after payment of the above legacies and collateral inheritance taxes on them, to be divided among such benevolent, charitable and religious institutions and associations as shall be selected by my executors or their successors." It was held that this bequest was good, and that the sole surviving executor had the power to designate the beneficiaries under it. Many other cases might be cited, but these we deem sufficient.

Another principle which has been finally established is, that where a trustee refuses to act, chancery will remove him and appoint another: Magill v. Brown, Brightly's Reports, 408. These are principles of equity which the Supreme Court, in Witman v. Lex, 17 S. & R. 91, declared to be the common law of the state, and which have been universally applied as far as the courts could be extended to the exercise of chancery jurisdiction: Wright v. Linn, 9 Barr, 433.

Therefore, under the facts of this case, all of the original trustees being dead, having failed and refused to carry out the purposes of the trust, and the new trustee, under the impression that it had no such power, having also failed to execute it, we are of the opinion that we have the power to discharge the Lancaster Trust Company from the trusteeship and order it to pay the fund to the Stevens Orphans' Home of Lancaster city, which we are of the opinion is such a corporation as was intended by the testator to carry out his beneficent wishes.

Over thirty years have elapsed since this distinguished fellow citizen was consigned to his last resting-place. In his love for humanity, without distinction of creed or color, he, under certain conditions, provided that this bequest should be made. Those conditions which were to render it effective have occurred, and the fund is now held for the uses which he so hu-

manely designated.   We think it is time that they be put into effect, and the persons whose names are inscribed upon the charter as corporators of the Stevens Orphans' Home of Lancaster city are sufficient guaranty that the trust will be honestly, prudently and faithfully executed. ,

We, therefore, order and decree that the Lancaster Trust Company be discharged as trustee under the will of Thaddeus Stevens, deceased ; that it do file an account of its said trust, and that it do pay over the balance as ascertained by the said account to the Stevens Orphans' Home of Lancaster city, to be used for the erection and maintenance of a home in accordance with the provisions of the will of the said testator, and the rule to show cause is, therefore, made absolute.

Rule made absolute.

*W. U. Hensel*, with him *Charles R. Kline*, for appellant, stated that the appellant submits itself to whatever decree might be entered by the Supreme Court.

*J. W. Appel*, of *Appel & Appel*, with him *H. R. Fulton*, for appellee.

PER CURIAM, July 17, 1901:

Upon a careful examination of the case presented for our consideration on this appeal we affirm the decree, entered in the court below, on the clear and satisfactory opinion of Judge LANDIS.

Decree affirmed and appeal dismissed.

---

200    325
29 SC  152

# Yentzer *v.* Farmers' Mutual Insurance Company, Appellant.

*Insurance—Fire insurance—Engaging in more hazardous business—Forfeiture of policy—Affidavit of defense.*

In an action upon a policy of fire insurance which stipulated that the insurance should be immediately void if the insured " shall locate another building for the purpose, or devote any part of the one insured, to any more hazardous business whereby the risk of the insurance shall be in-