Coleman Estate.

Argued January 12, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*David Cohen, Harry Lore,* and *Cohen and Lore,* for appellant.

*Richard J. Orloski,* Deputy Attorney General, with him *Catherine G. Barone,* Assistant Attorney General, *W. William Anderson, Deputy Attorney General,* and *J. Shane Creamer,* Attorney General, for Commonwealth, appellant.

OPINION BY MR. JUSTICE ROBERTS, March 25, 1974:

The single, narrow issue presented by this appeal[1] is whether a settlor may impose upon our courts the task of monitoring his wish that no person serve as an individual trustee of an irrevocable inter vivos charitable trust, if that person is married to a non-Protestant. We conclude that settlor's partiality for the religious persuasion of the trustees's spouses is irrelevant both to the competency of a trustee and to the proper administration of the trust, and is therefore unenforceable.

Horace C. Coleman (settlor) on December 26, 1935, created the Coleman Foundation, an irrevocable inter vivos trust. The net income of the Foundation was to be distributed by the trustees to charities. Settlor died in 1936.

Settlor designated as trustees his son, Horace C. Coleman, Jr.; his secretary, Eleanor Klemm; a friend, Rev. Jesse M. Corum, Jr.; and a corporate fiduciary.[2] In 1955, Reverend Corum resigned and settlor's other son, John M. Coleman, became a trustee.

Settlor also described who could become or remain a trustee. The provision engendering the instant controversy states: "No person shall be appointed a Trustee of this trust unless he, and his wife, if he is a married man, are both of the Protestant faith; should a

---

[1] Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(3), 17 P.S. § 211.202(3) (Supp. 1973).

[2] Settlor named as corporate trustee The Pennsylvania Company for Insurances on Lives and Granting Annuities, whose successor in interest, The First Pennsylvania Banking & Trust Company, now serves as trustee.

person of the Protestant faith be appointed a Trustee and subsequently change his faith, or should he marry one who is not a Protestant, or should he marry one who is a Protestant and she subsequently change her faith, then he shall automatically resign his trusteeship."

This proceeding began on May 5, 1971, with the filing of the second account of the Coleman Foundation. The reason for its filing was the appointment as trustee of Anne Coleman Mamana, a granddaughter of settlor. A petition seeking court approval of her appointment was filed by John M. Coleman, her father, in his capacity as chairman of the board of trustees and in his own behalf as trustee. The petition recites that Anne Coleman Mamana "is married to John P. Mamana, who is Roman Catholic," and further that she has been appointed trustee by the board,[3] "subject to the approval of the court."

Some time later, Horace C. Coleman, Jr., petitioned the court to be discharged from further duties as trustee. His reason for resigning was that "[h]e did on Monday, July 19, 1971 marry a person who is a Catholic." The petition stated that he had already submitted his resignation to the board, because he believed the trust provision at issue here compelled his resignation.

The Orphans' Court Division of the Court of Common Pleas of Montgomery County denied the petition for appointment of Anne Coleman Mamana and ap-

---

[3] Settlor expressly granted the Foundation's trustees, both individual and corporate, the right to appoint successor trustees. All actions of the trustees, including the selection of successor trustees, were required to be by majority vote. The appointment of Anne Coleman Mamana was fully in accordance with settlor's trust provisions. Horace C. Coleman, Jr., John M. Coleman, and the First Pennsylvania Banking & Trust Company voted in favor of the appointment of Anne Coleman Mamana; Eleanor Klemm dissented.

proved the petition for the resignation of Horace Coleman. It concluded that because Anne Coleman Mamana and Horace Coleman were admittedly married to non-Protestants, both were prohibited by the language of settlor's trust from serving as trustees of the Coleman Foundation. Appeals urging reversal were taken by both the Foundation and the Commonwealth as *parens patriae*.[4] We reverse.

It is commonplace that "our courts, in their control over trustees who hold for charitable uses, exercise the broad visitorial and supervisory powers of the Commonwealth . . . ." *Toner's Estate,* 260 Pa. 49, 54, 103 A. 541, 543 (1918); see *McKee Estate,* 378 Pa. 607, 108 A.2d 214 (1954) (per curiam); *Wilson v. Board of Directors,* 324 Pa. 545, 550-51, 188 A. 588, 591-92 (1936); *Stevens's Estate,* 200 Pa. 318, 322-24, 49 A. 985, 986-87 (1901) (per curiam); *John C. Mercer Home v. Fisher,* 162 Pa. 239, 29 A. 733 (1894); *Lehigh University v. Hower,* 159 Pa. Superior Ct. 84, 93, 46 A.2d 516, 520-21 (1946); *Laverelle Estate,* 101 Pa. Superior Ct. 448, 451-52 (1931). Implicit in that power is the responsibility to administer trusts, especially charitable trusts, in a just, speedy, and inexpensive fashion. See *Mellon Estate,* 455 Pa. 294, 298-99, 314 A.2d 500, 502-03 (1974); *Girt Estate,* 452 Pa. 156, 164 n.7, 305 A.2d 372, 377 n.7 (1973); cf. Pa. O.C.R. § 2, rule 1.

Litigation spawned by a settlor's preference bearing no relation to the proper administration of trusts, dissipates trust assets, unduly burdens the judicial process, and unnecessarily delays other litigants from their day in court. See *James Estate,* 414 Pa. 80, 199 A.2d 275 (1964). See also *Franklin's Estate,* 150 Pa. 437, 24 A. 626 (1892); *Holdeen v. Ratterree,* 292 F.2d 338 (2d Cir.

---

[4] *Pruner Estate,* 390 Pa. 529, 136 A.2d 107 (1957); Pa. O.C.R. § 5, rule 5. See also Restatement (Second) of Trusts § 391 (1959); 4 A. Scott, Law of Trusts § 391 (3d ed. 1967).

1961) ; *Franklin Foundation v. Attorney General,* 340 Mass. 197, 163 N.E.2d 662 (1960). The time, expense, and effort involved in achieving judicial resolution of a controversy is already substantial. To permit or encourage the litigation of irrelevant trust notions, like the instant one, not only diverts trust assets from charities, but also frustrates the Commonwealth's policy favoring the prompt, orderly, and efficient administration of trusts. It follows, therefore, that public policy does not permit a settlor to burden the judicial system with the responsibility to keep watch over every one of his personal vagaries that is unrelated to any proper trust purpose. Our jurisprudence does not require that judicial significance be attached to all manifestations of a settlor's whimsy.

Settlor attempted to make the religious belief of trustees's *spouses* a condition of eligibility for service as a trustee. The judicial enforcement of settlor's wish will not result in the selection of better trustees, or improve the performance of existing trustees. It will not expedite the administration of the trust. We fail to see how the religious persuasion of an individual trustee's spouse has any more bearing on his service as trustee, than the religious persuasion of the *spouse* of the trust officer acting for the Foundation's corporate fiduciary has on his service.

A charitable trust is initially and continuously subject to the *parens patriae* power of the Commonwealth and the supervisory jurisdiction of its courts. "The responsibility for public supervision [of charitable trusts] traditionally has been delegated to the attorney general to be performed as an exercise of his *parens patriae* powers." *Pruner Estate,* 390 Pa. 529, 532, 136 A.2d 107, 109 (1957).[5] See Pa. O.C.R. § 5, rule 5.

---

[5] See also *Nevil Estate,* 414 Pa. 122, 128-29, 199 A.2d 419, 422-23 (1964) ; *Little Estate,* 403 Pa. 534, 539, 170 A.2d 106, 108-09 (1961) ;

Moreover, the orphans' court has plenary power to ensure the competency and performance of trustees. Trustees of a charitable trust are fiduciaries, and as such are officers of the orphans' court, subject to its exclusive supervision and control. Act of August 10, 1951, P.L. 1163, art. III, § 301(6), 20 P.S. § 2080.301(6) (1964) (now 20 Pa. S. § 711(12)). See *Wilson v. Board of Directors,* supra at 550-51, 188 A. at 591-92; *Hamilton v. John C. Mercer Home,* 228 Pa. 410, 422, 77 A. 630, 634 (1910) (per curiam); *Laverelle Estate,* supra, at 451-52; *Baer's Estate,* 55 Lancaster L. Rev. 111 (Pa. O.C. 1956).

There is simply no nexus between settlor's whimsical notion and the competency of trustees to perform their trust duties, always, it must be remembered, under the supervision of the court. In short, the religion of trustees's *spouses* is as irrelevant to the trustees's ability to serve as is the color of their spouses's eyes.

This Court has not infrequently stated that a settlor may "condition his bounty as suits himself, so long as he violates no law in so doing." *Morgan's Estate (No. 1),* 223 Pa. 228, 230, 72 A. 498, 499 (1909); see *Henry Estate,* 413 Pa. 478, 483-84, 198 A.2d 585, 587 (1964); *Kelsey Estate,* 393 Pa. 513, 518, 143 A.2d 42, 45 (1958); *Borsch Estate,* 362 Pa. 581, 587, 67 A.2d 119, 122 (1949). We have also consistently adhered to the principle that a person's prejudices are part of his liberty, and that these prejudices, if their enforcement does not offend the Constitution or public policy, can be made part of a settlor's scheme of distribution. *Johnson Estate,* 435 Pa. 303, 312, 255 A.2d 571, 575 (1969); *Somerville Will,* 406 Pa. 207, 216-17, 177 A.2d 496, 500-

---

*Commonwealth v. Barnes Foundation,* 398 Pa. 458, 467, 159 A.2d 500, 505 (1960); *Voegtly Estate,* 396 Pa. 90, 91-92, 151 A.2d 593, 594 (1959); *Garrison Estate,* 391 Pa. 234, 237-39, 137 A.2d 321, 323-24 (1958).

01 (1962); *Higbee Will,* 365 Pa. 381, 384, 75 A.2d 599, 601 (1950); *McCown v. Fraser,* 327 Pa. 561, 192 A. 674 (1937); *Oauffman v. Long,* 82 Pa. 72 (1876). However, settlor's partiality for the religious persuasion of the trustees's spouses is unrelated to his dispositive scheme. His desire was to benefit charity generally. He placed no restriction, save the trustees's absolute discretion, on the charities which could receive contributions from the Foundation. Neither injustice nor detriment to settlor's desire to benefit charities is occasioned by refusing to enforce the preference that the trustees's spouses be Protestant.

Moreover, this Court has never held that every notion of a settlor is entitled to judicial vindication. See *James Estate,* supra. Here, the declaration that trustees's spouses be Protestant appears as a whim, unrelated to settlor's charitable intentions, his scheme of distribution, or the administration of the trust. It is plainly insignificant in view of the Commonwealth's *parens patriae* power and the court's visitorial and supervisory responsibility. Adjudicating irrelevant notions, like settlor's preference for the religious persuasion of trustees's spouses, only results in the unproductive burdening of judicial resources and creates the risk that the quality of justice may be debased. Settlor's partiality is an irrelevant and unreasonable condition and not appropriate for judicial enforcement.

Settlor's trust instrument directed that the trustees select successor trustees.[6] A majority of the board appointed Anne Coleman Mamana trustee. The orphans' court should not have disturbed the board's decision by insisting upon compliance with what is realistically a condition of no substance or significance to the administration of the trust. It was error to reject

---

[6] See note 3 supra.

Anne Coleman Mamana's appointment because of her husband's religion. As for Horace C. Coleman, Jr., he may of course resign as trustee, if he so desires. However, his resignation based solely on his belief that it was compelled by his wife's religious persuasion should not have been enforced by the orphans' court. It was error to do so.

Considerations of settlor's partiality for the religious belief of trustees's spouses are not appropriate bases for determining eligibility of a trustee, and do not justify the court's determination. Settlor with the greatest clarity expressed his definite and exclusive intention to benefit the general public by his charitable contributions. That, and not the religious persuasion of the trustees's spouses, was the mission of his trust.

Decree reversed. Costs on the Foundation.

Mr. Chief Justice JONES concurs in the result.

Mr. Justice EAGEN dissents.