**Schaaf Trust**

*George C. Laub,* for trustee, petitioner.

*Richard J. Orloski,* Assistant Attorney General, for Commonwealth as parens patriae.

GRIFO, J., August 14, 1974.—Doris Irene Schaaf died on August 16, 1970, leaving a will which makes a number of bequests, including one to Lafayette College as trustee to create a scholarship fund for American-born Protestants who are children of members of certain lodges of Masons.[1] Lafayette College, as prospective trustee of this fund, has petitioned the court to modify the terms of the trust by deleting the following restriction:

"B. . . . provided, however, that such scholarships shall be awarded only to American-born citizens of

---

[1] The fifth paragraph of the will reads as follows:

"Fifth: All the rest, residue and remainder of my estate, both real and personal, of every nature and wherever situate, of which I may die seized or possessed, or in which I may have any interest, I give, devise and bequeath to LAFAYETTE COLLEGE, Easton, Pennsylvania, as Trustee, in perpetual trust, for the following uses and purposes:

"A. The principal of the said trust shall be known and designated as the AUGUST HENRY SCHAAF ENGINEERING SCHOLARSHIP FUND, in memory of my husband.

"B. The principal of the said trust fund shall be invested and reinvested, and the annual income therefrom and such part or all of the principal thereof as the said Trustee, in its sole discretion may deem advisable, shall be used to create scholarships to Lafayette College in such manner and amount as the Trustee shall determine, and the said scholarships shall be awarded to such deserving students, matriculated for an engineering degree, upon such basis or bases as to merit or financial need as the Trustee, in its sole discretion, may deem proper, provided, however, that such scholarships shall be awarded only to American-born citizens of the Protestant faith who are children of a member of a regular lodge of Free and Accepted Masons charted by a Grand Lodge having jurisdiction within the United States."

the Protestant faith who are children of a member of a regular lodge of Free and Accepted Masons charted by a Grand Lodge having jurisdiction within the United States."

The basis of the petition is that this type of restriction is forbidden by the college charter.

Lafayette College was chartered by an Act of Assembly, dated March 9, 1826. Article VIII of this charter provides:

"That persons of every religious denomination shall be capable of being elected trustees, nor shall any person, either as principal, professor, tutor, or pupil, be refused admittance into said college, or denied any of the privileges, immunities or advantages thereof for or on account of his sentiments in matters of religion."

There is, of course, no doubt that awarding a scholarship limited to citizens of the Protestant faith involves granting a privilege on account of religious sentiment, which is prohibited by the college charter. The wording of article VIII of the college charter is very broad: "Nor shall *any* person . . . denied *any* of the privileges, immunities or advantages . . ." (emphasis added). These words direct Lafayette College to remain as neutral about the religion of its students as the law allows. The State has the power to prohibit religious imbalance in granting scholarships to students at Lafayette as a condition of its charter. Accordingly, we read the command of the legislature, expressed in article VIII of the Lafayette College charter, that no pupil be denied any of the advantages of the college because of his religious sentiment, to include a prohibition against maintaining special scholarship funds for groups whose memberships are significantly different from the general population in religious sentiment.

Therefore, we are in agreement with the position of Lafayette College that the restriction of the scholarships to members of the Protestant faith is prohibited by the college charter, and, hence, impossible of fulfillment.[2] Under these circumstances, we are guided by the Probate, Estate and Fiduciaries Act of June 30, 1972 (No. 164), 20 Pa. S §6110, which provides:

"Except as otherwise provided by the conveyor, if the charitable purpose for which an interest shall be conveyed shall be or become indefinite or impossible or impractical of fulfillment, or if it shall not have been carried out for want of a trustee or because of the failure of a trustee to designate such purpose, the court may, on application of the trustee or of any interested person or of the Attorney General of the Commonwealth, after proof of notice to the Attorney General[3] of the Commonwealth when he is not the petitioner, order an administration or distribution of the estate for a charitable purpose in a manner as nearly as possible to fulfill the intention of the conveyor, whether his charitable intent be general or specific."

The bequest to Lafayette College is the residuary clause of the will, and if it is totally stricken, the fund in question will pass, through intestacy, to the State of New York.

The primary purpose of Mrs. Schaaf was to memorialize her husband at Lafayette College. The vehicle

---

[2] The section of the clause in question which relates to membership in the Order of Masons remains, since such membership does not violate any law of the Commonwealth.

[3] The Office of the Attorney General was given notice of the filing of this petition and agreed with the prayer of the petition requesting the right to deviate. After discussing several cases, the Attorney General's office stated: "Against this clear line of precedent, our office will interpose no objection to the prayer for relief of your petition."

chosen for this purpose was a scholarship fund for needy engineering students. Since she chose to present the residue of her estate to Lafayette College, rather than to a Protestant organization, we think her intent was more to benefit Lafayette College than to restrict her largess solely to Protestants. The intent of testatrix, here, can be most nearly fulfilled by allowing Lafayette College to administer the bequest with the restriction to Protestants deleted.

We are guided by the recent opinion of the Supreme Court in the case of Coleman Estate, 456 Pa. 163 (1973), filed March 25, 1974, where the court held unenforceable a settlor's partiality for the "religious persuasion of a trustee's spouse," and said:

"Considerations of settlor's partiality for the religious belief of trustees's [sic] spouses are not appropriate bases for determining eligibility of a trustee, and do not justify the court's determination. Settlor with the greatest clarity expressed his definite and exclusive intention to benefit the general public by his charitable contributions. That, and not the religious persuasion of the trustees's [sic] spouses, was the mission of his trust."

We do not mean, by this opinion, to ignore the biblical wisdom of St. Matthew (20:15):

"Is it not lawful for me to do what I will with mine own?"

However, it has long been the law in Pennsylvania that testamentary provisions which contravene statutes or public policy are unenforceable. See Commonwealth v. Brown, 260 F. Supp. 323, 357 (D. C. Pa., 1966), and cases cited therein. Where, as here, a bequest is illegal, testator's right must bow to the will of the legislature.

Accordingly, the court enters the following

## ORDER OF COURT

And now, August 14, 1974, the prayer of petitioner for a decree permitting a deviation from the express terms and conditions required in the performance of the trust is granted, and that part of paragraph fifth which reads as follows:

". . . of the Protestant faith. . . ."

is expunged as a condition of the trust. Further, petitioner is ordered and directed to perform all the remaining terms and conditions of the trust as directed in testatrix' last will and testament.