

*Donald M. Swope*, for petitioner.

KOHLER, J., (Nineteenth Judicial District, Specially Presiding), August 3, 1967.—This matter is before the court on the petition of Gettysburg College seeking the removal of a racial requirement in the determination of eligibility for scholarships at such college provided in a trust created by Rufus M. Weaver, inter vivos, on October 6, 1959. The settlor has since died, on September 14, 1964.

The petition was presented to Hon. W. C. Sheely, as President Judge of the court, on June 8, 1966, and a hearing thereon was held before Judge Sheely on August 15, 1966. Judge Sheely died without having ruled on the proceeding and the matter was assigned

to us for adjudication, as specially presiding, by the Supreme Court.

The Adams County National Bank, as successor to the original trustee named in the deed of trust, signed a written consent to the prayer of the petition, and the widow of the settlor signed a similar consent, joined in the prayer of the petition, and testified in favor thereof at the hearing.

The Attorney General, having been given notice of the proceeding, as parens patriae for charitable trusts, filed a written statement interposing no objection to the granting of the prayer of the petition.

The petition alleges, inter alia, that item 5 of the deed of trust, as created by the settlor, provides as follows:

"5. Trustee shall pay one-half of the net income from this trust to Settlor during the term of his natural life and after his death shall pay said one-half of the net income unto Leila M. Weaver, wife of Settlor. Trustee shall pay the remaining one-half of the net income and the entire annual net income after the death of Settlor and his wife unto Gettysburg College upon the following terms and conditions:

"(a) At least annually and on or before July 1 of each year Trustee shall notify Gettysburg College of the annual income then available and that that amount will be distributed to students of Gettysburg College as scholarships in amounts of Three Hundred ($300.00) Dollars upon the certificates of one or more principal officers of Gettysburg College that each proposed recipient is a deserving, white, male, Protestant student pursuing a mathematical course of instruction at the College leading to an award of the degree of Bachelor of Arts or of Bachelor of Science as is most appropriate in view of the sum total of all the courses pursued, and that each proposed recipient has maintained a rating above the average in (1) mathematics,

(2) another science course, (3) a foreign language course, and (4) English.

"(b) Upon the certificate of any such officer that after careful investigation it has been determined that there are not sufficient qualified and available applicants to consume all of the available scholarships, Trustee shall retain the balance remaining of such annual net income for subsequent distribution as scholarships at the end of the next succeeding period ending July 1 or a following such period thereafter.

"(c) The certificates of officers of Gettysburg College, together with the cancelled checks payable to Settlor, his wife, students named in such certificates and/or Gettysburg College, shall be and shall be deemed to be full receipts, releases and acquittances for the payments represented thereby".

The petition further alleges: "that consistent with the position and policies of Gettysburg College with respect to the criterion of race, it is impossible to fulfill the requirements of the trust"; that the settlor was an alumnus of Gettysburg College and always demonstrated a great interest in the college; that his principal charitable purpose in creating the trust was to benefit the college by providing scholarships; and that because of the criterion "white" in the certificate of eligibility of a candidate to be signed by a principal officer of the college, the charitable purpose of the trust has become impossible of fulfillment. The petition prays the court for a removal of the racial requirement "white" in the determination of eligibility for the scholarships, under the authority of section 10 of the Estates Act of April 24, 1947, P. L. 100, 20 PS §301.10.

From the record, we find the following relevant facts:

The settlor had been specially trained in patent law and was a member of the bar of the District of Colum-

bia. He had a lifelong association with Gettysburg College and many of his close relatives had been graduates thereof. The settlor was graduated from Gettysburg College in 1907; he was on the faculty of the college from 1908 to 1910; he regularly attended his class reunions and was very active in the alumni affairs of the college.

The deed of trust was executed on October 6, 1959, and Gettysburg College accepted the benefits therefrom and executed the certificates of eligibility for the scholarships, until April 23, 1964. The following year, the trustee was notified by letter from the president of the college that the latter was "not able to fulfill the requirements of the trust with regard to the criterion of race since to do so would be contrary to the position and policies of the College".

The corpus of the trust is presently in the approximate amount of $30,000; however, under the provisions of the settlor's last will and testament, and upon the death of the settlor's surviving widow, the corpus may be increased approximately $85,000.

Approximately one year after execution of the deed of trust, the dean of the college called the settlor's attention to the fact that the college was unhappy that the criteria on race was in the deed of trust, but the settlor indicated no desire to change it at that time, nor did he take any steps to change it during the next four years that he lived, even though he had reserved an express power of revocation in the deed of trust.

Gettysburg College is a privately supported, independent, liberal arts college for young men and women, and has always operated under the influence of the Lutheran Church. For many years, the policy of the Lutheran Church has been against discrimination on the grounds of race. The policy on admissions, adopted in 1959, contains no reference to race. The faculty of the college, on March 11, 1965, recommended that any

*future* gifts to the college containing restrictive language concerning race or color be refused. (Italics supplied.)

On April 28, 1962, the settlor executed another deed of trust, with almost identical terms and provisions and with the same corporate trustee, called the Weaver Classical-Natural-Science-Religion Scholarship Foundation. A like petition seeking the removal of the racial criterion from this trust is presently before us and presented by Gettysburg College. This petition was presented and heard, contemporaneously with the proceeding which is the subject of this opinion, and will be the subject of a separate decree. It is identified as May term, 1965, no. 18.

Section 10 of the Estates Act of 1947, supra, which is the cited authority for our requested action, provides as follows:

"SECTION 10. Administration of charitable estates.— Except as otherwise provided by the conveyor, if the charitable purpose for which an interest shall be conveyed shall be or become indefinite or impossible or impractical of fulfilment, or if it shall not have been carried out for want of a trustee or because of the failure of the trustee to designate such purpose, the court may, on application of the trustee or of any interested person or of the Attorney General of the Commonwealth, after proof of notice to the Attorney General of the Commonwealth when he is not the petitioner, order an administration or distribution of the estate for a charitable purpose in a manner as nearly as possible to fulfill the intention of the conveyor, whether his charitable intent be general or specific".

The comment by the Joint State Government Commission states that this section is intended to supplant the five conflicting and inconsistent statutes on

the cy pres principle. (Citing the five statutes, commencing with the Act of 1855, P. L. 328).

There can be no doubt that the purpose of the trust before us is charitable, within the meaning of section 1(1) of the Estates Act of 1947, supra; hence, it is a charitable trust.

The doctrine of cy pres is a judicial mechanism for the preservation of a charitable trust when accomplishment of the particular purpose of the trust becomes impossible, impracticable or illegal. Under such conditions, if the settlor manifested an intention to devote the trust to a charitable purpose more general than the frustrated purpose, the courts, instead of allowing the trust to fail, will apply the funds to a charitable purpose as nearly similar as possible to the particular purpose of the settlor. Very similar to, but distinct from, the principle of cy pres is the doctrine of deviation from the terms of a trust. The doctrine of deviation is applicable when compliance with an administrative provision of the trust is impossible, illegal or in conflict with the essential purpose of the trust. In such a situation, the court, pursuant to its general equity power, may allow modification of the provision. Essential to its application is a finding that the term of the trust to be deviated from is an administrative one, so that it is not positively essential to the settlor's scheme. This finding is dependent upon an interpretation of the settlor's intent. Therefore, applicability of the doctrine of cy pres and the doctrine of deviation both depend upon the court's conclusion concerning what the settlor would have wanted to happen if he were aware of the contingency which has made the exact effectuation of his expressed intent impossible. See Restatement of Trusts 2d §§381 and 399.

Impossibility or impracticability of fulfillment of a charitable trust may result from many different cir-

cumstances. We are here concerned with only one: namely, whether the refusal of the officers of Gettysburg College to deliver certificates of eligibility for scholarships to the trustee, for the stated reason that the criterion "white" is inconsistent with its position and policies, would cause a failure of the trust unless the doctrine of cy pres is interposed, as expressed in section 10 of the Estates Act of 1947, supra.

This is a private charity, capable of being lawfully administered by private trustees. As of the date of this writing, it is the settled law of this Commonwealth that a person has a right to donate his property for a lawful charitable use and have his disposition judicially respected and enforced; that to have the lawful limitations and restrictions imposed by him is a manifestation of the right of private property which is fundamental to our social, economic and political order; and that no person has a constitutionally protected civil right to become a beneficiary of a private charity in defiance of a donor's plainly expressed and legally valid restrictive provisions concerning race, creed or color: Girard College Trusteeship, 391 Pa. 434 (1958), certiorari denied by the Supreme Court of the United States, 357 U.S. 570.

The deed of trust before us is not a holographic instrument prepared by an unlettered layman but rather a technical legal instrument evidently prepared for the settlor by one trained in the law. A reading of the entire instrument demonstrates a complete familiarity with and intentional use of technical expressions. Despite the settlor's deep sentiment for, and close connection with, Gettysburg College, the latter is plainly not the primary beneficiary for its general charitable purposes. The college is, in effect, a subtrustee for a specifically defined and restricted purpose; namely, to select deserving, white, male,

.Protestant students for scholarships in the college. Had he intended an outright gift to Gettysburg College for student scholarships to any needy student, in the college's discretion, it would have been a simple matter for the scrivener to express that intent. The settlor's deliberate failure to exercise his reserved right of revocation, after displeasure at the racial restriction was called to his attention, confirms his expressed intent. The testimony adduced at the hearing demonstrating the settlor's great love of and interest in Gettysburg College serves to prove only that he was interested in his alma mater and not in *all* deserving students at the college. His further restrictions to "male" and to "Protestant" is confirmation of his intent to limit his bounty.

The line of demarcation between impossibility and impracticability is most difficult to draw. It is one of degree rather than of kind. Impracticability does not mean that the objects of the trust could be obtained by some method of administration other than provided by the creator with greater facility or less trouble, but rather that to carry out the literal directions of the creator would, in effect, result in a failure to accomplish his general charitable intent, or in a frustration thereof: Restatement of Trusts 2d §399, comment q.

The mere fact that the power to choose those who should share the bounties of a charitable trust has been delegated is not sufficient to limit the exercise of the privilege to the individuals who are named. They are not the objects of the trust but merely the medium through which the purpose of the settlor may be carried out: Thompson's Estate, 282 Pa. 30 (1925). There is nothing in the trust deed, or from the testimony taken at the hearing, to indicate that this settlor desired the officers of the college, and

those only, to have the right to carry out his clearly expressed intent.

The petitioner has cited Howard Savings Institution of Newark v. Peep, 34 N. J. 494, 170 A. 2d 39 (1961). A bequest had been left to Amherst College "to be used as a scholarship loan fund for deserving American born, Protestant, Gentile boys of good moral repute, not given to gambling, smoking, drinking or similar acts". Amherst declined to accept because its charter precluded refusal of admission on account of religious opinion, unless the Protestant-gentile restriction was eliminated. The court, construing the will, concluded the dominant purpose to be benefiting needy students at Amherst, rather than Protestantism, and found that to appoint a successor trustee for the benefit of Protestant-gentiles at Amherst would be impractical to carry out the dominant purpose. Accordingly, it held that the dominant purpose could best be carried out by striking the restriction and turning the funds over to Amherst to be administered in accordance with the remaining terms and conditions of the trust.

Even if we were disposed to be governed by authority from another state, we decline to adopt the procedure there followed for the following reasons: (1) The conclusion turned upon a construction of the will finding an intent contrary to the intent disclosed in the Weaver deed of trust; (2) Amherst College was the only trustee named to administer the trust, whereas the Weaver trust interposes a separate corporate trustee and does not vest the sole trusteeship in Gettysburg College; (3) Amherst College declined the trust from its inception whereas Gettysburg College accepted, and administered, for some years before declining; and (4) the Amherst College charter precluded an administration of the trust under its strict terms.

We conclude that section 10 of the Estates Act, supra, and the doctrine of cy pres, are inapplicable to the problem presented by this petition, because that part of the trust which the college attacks, the eligibility criterion "white", is clearly and unmistakably declared and can be literally and lawfully carried out. Cy pres is never applicable to destroy a charitable trust or to permit or defeat a settlor's dominant intent, as the prayer of the petition would, in effect, have us do.

We have been cited no Pennsylvania authority, and our independent research has disclosed none, which has declared a trust impossible or impractical of fulfillment simply because the administration of the trust contravenes the policies or conscience of its administrator.

The inability of Gettysburg College to apply the racial criterion prescribed by the settlor for the scholarships affects the *trustee* and not the *trust*. In Girard College Trusteeship, supra, at page 443, it was stated:

"It is a universally accepted rule of law that the disqualification or incompetency of a trustee shall not be permitted to defeat the purposes of a charitable trust, nor to impeach its validity, nor to derogate from its enforcement—the trustee must be fitted to the trust and not the trust to the trustee".

In Stevens' Estate, 200 Pa. 318, 322, it is stated:

"The courts of Pennsylvania have looked with favor upon charities, and the law of the state, as administered from the beginning of this province, has always been broad enough to discern the objects of every charity and to preserve and enforce it, notwithstanding any defect, such as want of power in the trustees or otherwise: The Apprentices' Fund Case, 13 Pa. C.C. Rep. 241. Therefore, when a charity is established in any manner, such a slight impediment as a defect or want of power in the trustee to execute it

does not stand in the way; the charity remains; the trustee is declared incapable of acting, and a competent trustee is appointed in his place. Chancery here steps in to enforce it and commits it to someone who may lawfully administer it: Frazier v. St. Luke's Church, 147 Pa. 256".

The Adams County National Bank is presently the settlor's designated corporate trustee to administer the funds of the trust, and the officers of Gettysburg College were designated to certify the eligible students for the scholarships. The latter designation does not preclude the application of the foregoing principles because the college, through its officers, is a "secondary" or "sub" trustee for the full trust administration. See Bogert Trusts 2d Ed. §413.

The description of the intended beneficiaries of the scholarships is so defined that a substituted agency, person, or committee, acting in the same secondary trustee role as the officers of Gettysburg College for the issuance of certificates of eligibility, could select students meeting the qualifications. The element of discretion is not broad. We iterate that there is nothing in the deed of trust, or in the record, warranting a conclusion that such selection should lie exclusively in the discretion of the officers of the college. The settlor's primary purpose was to create scholarship funds for a certain class of Gettysburg College students. The appointment of the officers of the college to select them is not an essential part of the settlor's plan. The scholarships at Gettysburg College were of primary importance and the nomination of the person or persons to select the students worthy of them was secondary. The officers of the college are a mere conduit through which the settlor's bounty is to flow to the specially qualified persons.

If, after another search of its conscience, the college decides that it must persist in its refusal to permit

any officer of the college to issue certificates of eligibility under the restrictive qualifications, this court will always be open to a proceeding instituted by the corporate banking trustee, or any other person having a legal interest to enforce the trust, seeking approval of an alternate plan for the issuance of the certificates of eligibility for the scholarships as that eligibility is defined in the deed of trust. The Pennsylvania decisions heretofore cited, as well as the doctrine of deviation heretofore discussed, authorize such proceeding.

And now, August 3, 1967, the petition of Gettysburg College, under section 10 of the Estates Act of 1947, is dismissed.

This decree is entered nisi and, in the absence of written exceptions filed within 20 days from the date hereof, shall become absolute, as of course.