## James Estate.

Argued January 20, 1964. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Charles A. Woods, Jr.*, Deputy Attorney General, with him *James L. Price*, Special Assistant Attorney General, and *Walter E. Alessandroni*, Attorney General, for Commonwealth, appellant, as parens patriae.

*Barbara Ann Duffy*, with her *William C. Hamilton*, and *Fell & Spalding*, for appellee.

OPINION BY MR. JUSTICE ROBERTS, March 20, 1964:

Frank James died testate on March 22, 1960. In his will, admitted to probate by the Register of Wills of Philadelphia County, he created a life estate, in trust, of certain real estate and personalty, at the termination of which he directed sale of the assets and the addition of the proceeds to the principal of his residuary trust. He set aside a fund for the maintenance of the real property and directed that any balance from this fund also be added to the residuary trust. The unique terms of the residuary trust, which give rise to this litigation, provide as follows:

"SECOND: All the rest, residue and remainder of my estate, of whatsoever kind and wheresoever situate, I give, devise and bequeath unto my Trustee, hereinafter named, and its successors, IN TRUST NEVERTHELESS, to hold, invest, and reinvest the same, to collect the income therefrom, and after paying all expenses incident to the management of the trust, to accumulate and to pay over the net income to THE RIGHT WORSHIPFUL GRAND LODGE OF FREE AND ACCEPTED MASONS OF

PENNSYLVANIA, for the use of the Masonic Homes at Elizabethtown, Pennsylvania as follows:

"(A) At the expiration of twenty years from the date of my death, 50 per cent of the net income received to date. The remaining 50 per cent of net income shall be added to the principal of this trust to be invested and reinvested in accordance with the terms hereof. Upon the receipt of this first payment of income, it is my request that an appropriate memorial tablet be erected by The Right Worshipful Grand Lodge of Free and Accepted Masons of Pennsylvania at the Masonic Homes in Elizabethtown, Pennsylvania, in honor of ELIZABETH STOTT JAMES AND FRANK JAMES.

"(B) Thereafter every twenty years on the anniversary date of the date of my death, Trustee shall pay over 50 per cent of the net income received since the last payment date and the remaining 50 per cent shall be added to the principal of this trust to be invested and reinvested in accordance with the terms hereof. This manner of payment shall continue until two hundred twenty years have elapsed from the date of my death.

"(C) Two hundred twenty years from the date of my death, my Trustee is to increase the percentage of income payable to 75 per cent, and the other 25 per cent shall be added to the principal of this trust to be invested and reinvested in accordance with the terms hereof. This manner of payment shall continue every twenty years on the anniversary date of the date of my death until four hundred years have elapsed from the date of my death.

"(D) Four hundred years from the date of my death this trust shall terminate, and the principal of this trust and any accumulated and undistributed income shall be paid over to THE RIGHT WORSHIPFUL GRAND LODGE OF FREE AND ACCEPTED MASONS OF PENNSYLVANIA, for the use of the Masonic Homes at Elizabethtown, Pennsylvania, absolutely."

The Masonic Grand Lodge filed a petition for leave to deviate from the administrative terms of the trust, asserting that the provision for accumulation of income is unreasonable and illegal, and seeking annual distribution of income. The Commonwealth, as parens patriae in charitable trusts, appeared by the Attorney General in support of the petition. Fidelity-Philadelphia Trust Company, Executor, filed an answer. On October 9, 1961, the estate came on for audit.[1]

The auditing judge dismissed the petition of the Grand Lodge. Exceptions filed by the Attorney General were dismissed by the court en banc (three of the six members agreeing). That court affirmed the adjudication of the auditing judge directing distribution in exact compliance with the terms of the will and in accord with the literal wording of the Estates Act of 1947, P. L. 100, §6(b)(1), added February 17, 1956, P. L. (1955) 1073, §3, 20 P.S. §301.6(b)(1) (Supp. 1963). This appeal by the Commonwealth followed.

The concept of what constitutes a charitable trust is a continually expanding one.[2] On the record before

---

[1] On October 3, 1961, the executor filed an "Analysis of Projected Principal and Income." The approximate corpus of the residuary trust was $41,500. With the expected increase from the life estate in trust, the residuary trust corpus was estimated at $52,500. Under the formula for accumulation provided in the will, compounding interest at 3%, and without considering profits or losses in the administration of the trust, the estimated value of the trust in March, 2360, would be $14,411,000. (This is the figure given in appellee's brief. According to the dissenting opinion, the figures at various rates are: 3%—$16,270,940; 4%—$150,414,516; 5%—$1,595,511,171; 6%—$19,242,724,745.)

[2] The Estates Act of 1947, P. L. 100, §1(1), 20 P.S. §301.1(1), gives the following definition: " 'Charity' or 'charitable purposes' includes but is not limited to the relief of poverty, the advancement of education, the advancement of religion, the promotion of health, governmental, or municipal purposes, and other purposes the accomplishment of which is beneficial to the community." Accord, Restatement (2d), Trusts §368 (1959); see 1 Hunter, Penna. Orphans' Court Commonplace Book, Charities §1 (2d ed. 1959).

us, and under applicable law, there is no question but that testator established a charitable trust.[3]

The basic issue for determination is the proper construction of the legislative direction that the statutory provisions under which accumulations of income are declared void shall not apply to accumulations of income for charitable purposes. Estates Act of 1947, P. L. 100, §6(b)(1), added February 17, 1956, P. L. (1955) 1073, §3, 20 P.S. §301.6(b)(1) (Supp. 1963). Interpretation of this provision must be in accord with the presumption "that the Legislature does not intend a result that is absurd, impossible of execution or unreasonable." Statutory Construction Act, May 28, 1937, P. L. 1019, §52(1), 46 P.S. §552(1).[4]

The majority below[5] observed, "That the instant record discloses no present absurdity in the prospective growth of this prescribed accumulation does not close the door to proof of such fact (if it should become a fact) in the future." To the contrary, as our determination here indicates, we are in complete accord with the observation of the concurring and dissenting opinion that "it is not necessary for the Court to await future events to determine whether the accumulation provisions of this trust prove absurd or unreasonable. The inevitability of such result is now apparent."

Furthermore, the court interpreted the statute in its strict, literal sense and held that it was without authority to pass on the reasonableness of the accumulations directed. In doing so, the court erred. We may not view the statute as the mere utilization of words employed in an exclusively literal sense without regard to the social circumstances, charitable needs and

---

[3] A stipulation filed in the court below describes the nature of the charity in this case.

[4] This legislative provision is fully discussed in *Watson v. Witkin*, 343 Pa. 1, 6, 22 A. 2d 17, 19 (1941).

[5] SHOYER, J., joined by SAYLOR and BURKE, JJ.

public policy surrounding the legislation. So considered, its provisions require the application of a doctrine of reasonableness.

The concurring and dissenting opinion[6] persuasively commented: "The division in the Court arises because the Auditing Judge and those of our colleagues who agree with him appear to have concluded that Section 6(b)(1) of the Estates Act of 1947, as amended February 17, 1956, P. L. (1955) 1073, 20 P.S. §301.6-(b)(1) must be interpreted strictly and literally regardless of how unreasonable the direction to accumulate income may be. Such a construction could easily lead to an absurd result, which the Legislature obviously did not intend as for example, a direction to accumulate the income on a trust principal of $10,000 for a period of 10,000 years.

. . . .

"Charitable trusts are favorites of the law because they are in relief of the public burden. . . . It follows necessarily from this legislative favoritism that the legislative intent inherent therein is that the benefits flowing from such gifts in trust should directly, currently and reasonably perform their function and not be unduly postponed. Therefore, it is the duty of this Court, in furtherance of its visitorial powers over charitable trusts, to implement this intent. The adjudication and the majority opinion overlook this basic aspect of the case.

. . . .

"The principal of charitable trusts may be held for any period of time even in perpetuity. A literal reading of this statute would authorize the perpetual accumualtion of *income* as well as of principal. Obviously, this was not the legislative intent. Such gifts would be ineffectual, would achieve no charitable pur-

---

[6] By KLEIN, P. J., joined by BOLGER, J.

pose and would consequently be void as charitable gifts, since no direct benefit would flow from them; their term would be uncertain: Girard Company v. Russell, 179 Fed. 446. We must imply that the legislative intent was to further charitable purposes and not to void them. It would, therefore, appear that if income cannot be accumulated perpetually, there must be some stage during the operation of a trust short of perpetuity when the accumulation of income shall cease. At what stage of its operation such event shall occur must be a judicial function in the absence of any legislative direction relating thereto.

". . . Therefore, the Act must be *liberally* construed; such construction should be consistent with the Pennsylvania legislative intent of its tax exempting statutes and thus brought into line with the law in practically all of the other states of the union, all of which subscribe to the 'reasonableness doctrine'. . . ."

The dissenting opinion[7] appropriately noted: "The majority makes reference to Benjamin Franklin's famous will. It is probably the most extreme illustration of accumulation of income in the books. This will has been sustained in Benjamin Franklin's Estate, 27 W.N.C. 545 and 150 Pa. 437; Benjamin Franklin's Administratrix v. City of Philadelphia, 2 Dist. 435; City of Boston v. Doyle, 68 N.E. 851. However, none of these cases specifically ruled upon the point now at issue. Moreover, in Benjamin Franklin's Estate, supra, 27 W.N.C. 545, 548, the illustrious Judge PENROSE quoted with approval Gray, The Rule Against Perpetuities [§678 (4th ed. 1942)], viz.: ' "And where there is an unconditional gift to charity, the gift will be regarded as immediate and good, although the particular mode of carrying out the charity which the donor has indicated is too remote. Conse-

---

[7] By LEFEVER, J.

quently, in such a case, *if a direction for accumulation is too remote, the only result is that the income is immediately distributable in* charity; the heirs or next of kin are not let in." ' (Emphasis supplied) [Emphasis indicated in opinion below.]

"It is notable that the corpus and the accumulated income in Dr. Franklin's trust were to be put to work immediately and continuously throughout the 200 years of its existence to afford assistance to young and impecunious artificers by providing them with loans at 5% interest, which was less than the current rate, and without collateral security. How different the instant case, where a portion of the accumulations is to lie idle for 400 years! . . .

". . . [T]he 'reasonable' test is generally accepted and applied throughout the United States. It is approved by text writers. Analysis of the Pennsylvania statute and cases fails to disclose clear legislative or judicial policy to set the law of Pennsylvania apart from that of the other states on this subject. It follows that this court has the power and the duty to apply the 'reasonable' test to charitable accumulations. This historic court, founded by Penn on the pattern of the famous Court of Orphans in London and grounded in the application of equitable principles, is not impotent to vary a trust which will continue until the accumulations reach astronomical size 400 years from now." See 4 Scott on Trusts §401.9, at p. 2886 (2d ed. 1956).

The will of Frank James supplies no indication of purpose for the 400 year accumulation provision, nor does it, either by express language or by implication, reveal any particular plan or need for retaining accumulations over such an extended period of time. We are satisfied, however, that the settlor intended to benefit the charity rather than to demonstrate by the device of a lengthy charitable accumulation the effect of accumulation of income and the compound interest ta-

bles. In reality, were we to sustain the accumulation of wealth in the amount and manner contemplated, we would demonstrate the latter effect rather than implement the settlor's primary charitable intention. We are reluctant to ascribe to testator the paramount desire merely to turn an approximately $50,000 trust fund into a final gift of almost $15,000,000, at the expense of immediate social needs.

No case has been cited to us, nor have we been able to locate any authority, which appears to recognize the validity of a proposed gift whose enjoyment is delayed for a period of four centuries without apparent reason.[8]

We hold, therefore, that the provisions for accumulation of income are unreasonable and void as being unnecessary, charitably purposeless and contrary to public policy as well as to testator's primary charitable intention.

We turn now to the issue of what is to be done with the income. We are unable to agree with the conclusion of the concurring and dissenting opinion that all the income be accumulated for twenty successive periods of twenty years and that the income accumulated during such periods be distributed at the end of each period. Although this distribution pattern would follow that established in testator's will, on this record, such an accumulation of income for 20 twenty-year periods has no apparent practical or reasonable purpose.

---

[8] Benjamin Franklin's will, because it did particularize the intention of the testator, prompted this most recent observation in *Franklin Foundation v. Attorney General*, 340 Mass. 197, 163 N.E. 2d 662, 667 (1960): "We are not convinced that his charitable objectives have ceased to be in accord with the public interest or have become so unreasonable under current conditions that we should exercise our undoubted equitable power of termination. . . ."

Had the will provided some guide as to testator's plan or purpose, there might be some basis for that scheme of distribution. But testator did not point to capital improvements or to any other needs of the charitable institution which ordinarily could not be met by drawing on current funds, nor did he indicate any other motivation for his plan. The projected scheme of delayed distribution prevents practical, effective use of the funds in question, and, as such, is unreasonable.

It is, however, clear that testator's plan of accumulation was merely incidental to his primary charitable intention to create a source, perhaps in the nature of an endowment fund, which would provide continuing income over the 400 year term for the maintenance of the Masonic Homes. The result we reach is in harmony with his primary and controlling charitable objective.

We are not without some guide as to the proper disposition of the income. Section 7 of the Estates Act of 1947, P. L. 100, §7, added February 17, 1956, P. L. (1955) 1073, §3, 20 P.S. §301.7 (Supp. 1963), requires, in those situations controlled by it, that "income subject to a void direction or authorization to accumulate shall be distributed to the person or proportionately to the persons in whom the right to such income has vested by the terms of the instrument or by operation of law." While this charitable trust is not governed specifically by this provision, it is pertinent to observe that in §7, the Legislature has approved immediate distribution.

Even though our laws favor the accumulation of income and wealth for philanthropy, nevertheless, gifts and the accumulation of income for unreasonably long periods offer many opportunities for disservice to immediate charitable needs as well as to those of remotely future generations.

It has been prophetically observed that no human being, no matter how wise or experienced, is able to

foresee the special needs of society, even one or two generations away, let alone 400 years hence. Shifting and advanced social concepts, programs and concerns emphasize the hazards of seeking to correct or alleviate social problems so distantly removed from testator's generation. We conclude, therefore, that the testator's primary charitable intention is best attained by making available to the beneficiary the income of the trust on a current basis.

Accordingly, the decree below is vacated, and this matter is remanded for the entry of a decree consistent with this opinion. Costs upon the estate.

Mr. Chief Justice BELL dissents.