## Whelan Estate

*Charles W. Sweeney,* for accountant.

*George S. Forde, Jr.* and *James E. Gallagher,* for petitioner.

SHOYER, J., February 2, 1972.—James T. Whelan died June 20, 1970, not survived by a spouse or children, leaving a will dated December 20, 1965, a copy of which is attached, whereby the testator directed that the Dinan Funeral Home conduct his funeral, the arrangements for the payment thereof having already been made; $1,000 to each of Dr. Albert F. D'Alonzo and "operators of the Dinan Funeral Home. . . . This money is a gift and is not to be used for my burial expenses"; $50 a month "out of the interest received on my account in the Beneficial Saving Fund Society to my first cousin ANN DOYLE COCKERAM as long as she may live"; and he provided

"FIFTH: The sums that I have on deposit with the Beneficial Saving Fund Society, or in any other Savings Fund Society, at the time of my death are to remain on deposit until the total sum, plus accumulated interest, amounts to $100,000.00 at which time it is to be given to the Maryland Province of the Jesuit Order."

In Item SIXTH he gave his residuary estate to the Maryland Province of the Jesuit Order.

All parties in interest are stated to be sui juris.

Letters of Administration C.T.A. were granted to the accountant on September 10, 1970, and proof of publication of the grant of the same is hereto attached.

Payment of inheritance tax on July 27, 1971, in the sum of $815.42 was duly vouched.

It appears from the account that is being audited that the only assets in the decedent's estate are Beneficial Saving Fund Account No. A/C 1-264407 containing $27,130.79 and a checking account in The Fidelity Bank containing $1,384.89. Credit is taken for expenditures aggregating $7,627.37, leaving a balance of $20,888.31. Credit is also taken for distribution of the two $1,000 legacies which leaves a fund of over $18,000

for the payment of the $50 monthly annuity and as the corpus of the fund to be accumulated.

Notice of the audit was given to the Attorney General as parens patriae of gifts to charities in accordance with Rule *55 and the Clearance Certificate executed by James L. Price, Esquire, Special Assistant Attorney General, is hereto attached.

Counsel for the parties were requested by the court to consider the practicalities involved in the testator's direction to accumulate the fund in the Saving Fund Society until it had reached the sum of $100,000.

The Corporation of the Roman Catholic Clergymen, a Maryland nonprofit corporation, referred to in the will as "Maryland Province of the Jesuit Order," has filed a petition to terminate the trust under section 2 of the Estates Act of 1947. The petition recites, inter alia, that the Beneficial Savings Fund Account presently contains a balance of $18,780.79; that the accumulations provided by the will are impractical of fulfillment and would eventually defeat the original charitable purpose expressed by the decedent in his will. It seems that the apparent intent of the testator was to make an ultimate gift to the petitioner while providing a modest lifetime income for his first cousin, Ann Doyle Cockeram, erroneously named "Cockeran" in the will; that the long period which would be required to accumulate $100,000 would present a disservice to the immediate charitable needs for which provision has been made and to the ultimate value of the gift which the decedent intended. The only parties in interest are the petitioner and Ann Doyle Cockeram, and the Commonwealth of Pennsylvania as parens patriae, all of whom have notice of the petition. The charity has estimated that it would take between 30 and 40 years for the fund to accumulate to $100,000

and, as a result of the Tax Reform Act of 1969, pertaining to private foundations, the accumulation would be subject to an annual four percent rate of tax which, together with expenses of administration would tend to reduce the net income and extend the period of time necessary to achieve the $100,000 fund. Petitioner is willing to accept the present funds and to pay the $50 per month to Ann Doyle Cockeram during her life. Attached to the petition is the joinder therein by Ann Doyle Cockeram.

The Act of February 17, 1956, P. L. 1073, repealed section 6 of the Estates Act of 1947 and provided:

"Section 6: Income Accumulations—When Valid.

"(a) General. No direction or authorization to accumulate income shall be void, except as herein provided.

"(b) Void Accumulations; exceptions.—Upon the expiration of the period allowed by the common law rule against perpetuities as measured by actual rather than possible events, any direction or authorization to accumulate income shall be void.

"This subsection shall not apply to:

"(1) Directions or authorizations to accumulate income in a trust for any charitable purpose or purposes."

However, in James Estate, 414 Pa. 80 (1964), reversing 31 D. & C. 2d 1, where the testator gave his residuary estate in trust to pay one-half the income and after 220 years three-fourths of income every 20 years to a designated charity and to add rest of the income to principal which was to be distributed outright 400 years after the testator's death to the named charity, the Supreme Court held that such direction to accumulate was invalid and contrary to public policy. Even though the Estates Act of 1947, sec. 6, expressly states that it does not apply to charitable trusts, the court, nevertheless, ordered the income distributed on a current basis.

Counsel for the Roman Catholic Clergymen contends that the Tax Reform Act of December 30, 1969 (See 26 U.S.C. §4942) imposing the Income Tax on the undistributed income would extend the period required to attain the $100,000 fund. Such delays would defeat the intent of the testator and makes impractical the fulfillment of his charitable purposes.

Section 2 of the Estates Act of 1947 entitled "Termination of Trusts.—(a) Failure of Original Purpose," provides:

"The court having jurisdiction of a trust, heretofore or hereafter created, regardless of any spendthrift or similar provision therein, in its discretion may terminate such trust in whole or in part, or make an allowance . . . provided the court after hearing is satisfied that the original purpose of the conveyor cannot be carried out or is impractical of fulfillment and that the termination, partial termination, or allowance more nearly approximates the intention of the conveyor, and notice is given to all parties in interest. . . . But, distributions of principal under this section, whether by termination, partial termination, or allowance, shall not exceed an aggregate value of twenty-five thousand dollars from all trusts."

This section replaces the Act of 1931, P. L. 29, which provided for termination of trusts by agreement between charitable remaindermen and owners of prior interests.

At the hearing held before me on January 25, 1972, counsel for the accountant submitted to the court the notice dated January 18, 1972, to Mrs. Ann D. Cockeram, advising her of the audit hearing to be held on January 25, 1972, and enclosing her $50 check. At the bottom of this letter, in what appears to be her own handwriting, Mrs. Cockeram states that she is 79 years of age and stated her complete satisfaction in having the fund in the Beneficial Saving Bank dis-

tributed to the Jesuit Order upon their promise to pay her the $50 per month.

In view of the foregoing I find as a fact that the testator's direction that the fund in question, after payment of $50 monthly to the testator's cousin, Ann D. Cockeram, be accumulated until it reaches the sum of $100,000, is impractical of fulfillment. I further find that the testator's primary purpose was to enable the Maryland Province of the Jesuit Order to carry out its general purposes and such purposes can be better served by terminating the trust at this time as requested.

The petition by Corporation of the Roman Catholic Clergymen, referred to in the will as Maryland Province of the Jesuit Order, to terminate the trust and to award the remainder of the principal and income to it, subject to the payment of the annuity to Ann Doyle Cockeram, is approved. Awards will be made accordingly. . . .

Accountant is authorized to make the necessary transfers, as above.

And now, February 2, 1972, the account is confirmed nisi.