Girt Estate.

Argued March 16, 1973. Before Eagen, O'Brien, Roberts, Pomeroy, and Manderino, JJ.

*W. Reid Lowe*, with him *Meyer, Unkovic & Scott*, for appellant, Girt.

*Donald W. Shaffer*, with him *J. Murray Eagen, Rea P. Miller, Jr.*, and *Weller, Wicks and Wallace*, for appellant, Benzie.

*Clayton A. Sweeney*, with him *Thomas M. Thompson, Robert A. King*, and *Buchanan, Ingersoll, Rodewald, Kyle & Buerger*, for appellee, Toner Institute.

*Thomas L. Jones*, with him *Richard C. Witt*, and *Jones, Gregg, Creehan & Gerace*, for appellee, Pittsburgh National Bank.

OPINION BY MR. JUSTICE ROBERTS, May 23, 1973:

Charles H. Girt died on February 7, 1967, leaving a will, dated February 10, 1966, which was duly probated in Butler County. These appeals arise from the dismissal of exceptions filed by Susan Girt, testator's daughter, and Margie Rebar, now Margie Rebar Benzie, a legatee under the will, to the first and partial account of the Pittsburgh National Bank, the testamentary trustee.

The controversy in both appeals involves the disposition of trust income in excess of that required to satisfy certain specific annuities established by decedent's will. After directing the payment of all debts and funeral expenses, testator, in Articles Second and Third, provided:

"Second, I am not unmindful of my legal daughter, SUSAN GIRT, and by this Will do not give, devise or bequeath any of my estate unto her.

158

"THIRD: All the rest, residue and remainder of my estate of whatsoever kind and wheresoever found, I give, devise and bequeath unto the Pittsburgh National Bank of Pittsburgh, Pennsylvania, in trust nevertheless, for the following purposes, to invest and reinvest the same and to pay the income therefrom as follows:

"(A) To my AUNT ANNIE GOOD the sum of One Hundred ($100.00) Dollars a month until the time of her decease.

"(B) To my AUNT EMMA COLEMAN the sum of One Hundred ($100.00) Dollars a month until the time of her decease.

"(C) To my brother, JEROME GIRT, the sum of Two Hundred Fifty ($250.00) Dollars a month until the time of his decease.

"(D) To MARGIE REBAR, the sum of Two Hundred Fifty ($250.00) Dollars a month until the time of her decease.

"(E) To pay to MARGIE REBAR the sum of Three Thousand ($3,000.00) Dollars each year for a period of ten (10) years, said amount being paid out of the income remaining after the payment of the above legacies and so much of the principal of my estate as may be necessary to provide payment of Three Thousand ($3,-000.00) Dollars each year. At the end of ten (10) years my said trustee is ordered and directed to pay over to MARGIE REBAR all of the capital stock of the MESTA MACHINE COMPANY which is in my possession at the time of my decease. My said trustee is specifically authorized and directed to retain as an investment the said capital stock of the Mesta Machine Company. If Margie Rebar should die prior to the expiration of the said ten (10) year period, then the remaining undistributed shares of capital stock of Mesta Machine Company shall become a part of my residuary estate and shall be distributed as a part thereof.

"(F) Upon the death of all of the above named legatees the said trust shall terminate and I give, devise and bequeath all of the rest, residue and remainder of my estate including the remaining principal or corpus of the trust and any income accrued and undistributed unto the Toner Institute of Pittsburgh, Pennsylvania."[1]

The trustee filed its first and partial account on May 26, 1971, which account reflected that the trustee currently held principal in the amount of $495,000, and $60,000 in excess accumulated income, after having made the distributions mandated by Article Third of the will. Appellant Rebar Benzie filed exceptions to this account, claiming her entitlement to the excess income (accumulated by the trustee) and, in the alternative, her entitlement to all income derived from the Mesta Machine Company stock. Appellant Girt also filed exceptions, contending that the surplus accumulated income should pass to her by intestacy. The orphans' court dismissed appellants' exceptions, approved the account, and directed that all excess income be accumulated for the benefit of the residuary legatee, the Toner Institute. These appeals followed, and we now affirm.

Appellant Girt alleges that although Article Second explicitly excludes her from taking under the will, she is nonetheless entitled to the excess accumulated income held by the trustee. Appellant suggests that this surplus income was not disposed of by testator's will, and accordingly, should pass to her by intestacy, as

---

[1] Testator was survived by Susan Girt, a daughter; Annie Good, an aunt; Jerome Girt, a brother; and Margie Rebar Benzie, a friend. Emma Coleman, the annuitant pursuant to Article Third (B), predeceased testator. Annie Good and Jerome Girt died prior to this litigation. The residuary legatee, Toner Institute, is a charitable institution in Pittsburgh.

she is the sole surviving heir of Charles Girt. We must reject this contention.

" 'One who writes a will is presumed to intend to dispose of all his estate and not to die intestate as to any portion thereof: Provident Trust Co. of Philadelphia v. Scott, 335 Pa. 231, 6 A. 2d 814; Duffy's Estate, 313 Pa. 101, 169 A. 142; Appeal of Ferry, 102 Pa. 207; Miller's Appeal, 113 Pa. 459, 6 A. 715. If possible to do so, a will must be construed to avoid an intestacy; Rapson's Estate, 318 Pa. 587, 179 A. 436; Boland v. Miller, 100 Pa. 47.' Carmany Estate, 357 Pa. 296, 299, 53 A. 2d 731." *Grier's Estate,* 403 Pa. 517, 522, 170 A. 2d 545, 548 (1961). Where the decedent fails, however, to provide, by will, for the disposition of his entire estate, the undisposed of portion passes by intestacy. *Knox's Estate,* 328 Pa. 188, 195 Atl. 34 (1937); *Grothe's Estate,* 229 Pa. 186, 78 Atl. 88 (1910). Moreover, if intestacy does result, the fact that a provision in the will expressly disinherits an heir will not prevent that heir from taking a portion of the estate by intestate succession.[2]

Here, however, the testator did *not* fail to provide for the disposition of his entire estate. The language used by the testator in Article Third (F) is plain and clearly discloses his intention that all income, not specifically bequeathed to a named legatee, should pass, upon the death of all life annuitants, to the residuary beneficiary. The will, thus, interprets itself.[3] Cf. *Wood v. Schoen,* 216 Pa. 425, 66 Atl. 79 (1907).

[2] Even though a disinherited heir may take by intestacy, a testamentary provision disinheriting an heir is a substantial factor to be considered in determining whether or not there is an intestacy. *Ervin's Estate,* 367 Pa. 58, 61, 79 A. 2d 264, 265 (1951); *Gibbons' Estate,* 317 Pa. 465, 467, 177 Atl. 50, 51 (1935).

[3] Under the law in effect at the time of testator's death, and under present statutory provisions, accumulations of excess income

"Upon the death of all of the above named legatees the said trust shall terminate and I give, devise and bequeath *all of the rest, residue and remainder of my estate including the remaining principal or corpus of the trust and any income accrued and undistributed unto the Toner Institute of Pittsburgh, Pennsylvania."* (Emphasis added.)

"The words 'residue and remainder' are technical legal terms with a well understood and definite meaning. *They signify all that is left after the gifts specified or designated have been paid or satisfied."* *Suttner's Estate,* 348 Pa. 159, 160, 34 A. 2d 483-84 (1943) (emphasis added). This being so, it is apparent that the instant residuary clause must be interpreted to control the disbursement of all income not specifically bequeathed by testator.

Appellant Girt (as well as appellant Benzie), however, argues that the use of the words "income accrued and undistributed" is insufficient to establish the testator's intent that excess income be accumulated for the residuary legatee. We do not agree.

The terms of the instant will demonstrate with ample clarity a testamentary intent to bequeath to the Toner Institute the entire balance of the estate after satisfaction of Article Third's five precise specific bequests. Testator bequeathed fixed monetary income annuities to four named legatees—any income remaining in the hands of the trustee after fulfilling the directives of Article Third (A-E) was clearly to pass, by the residuary clause, to the residuary distributee, and not to a disinherited heir. We are in complete agreement with the orphans' court's statement that any other

by a trustee are lawful. Estates Act of 1947, Act of April 24, 1947, P. L. 100, §6, as amended, 20 P.S. §301.6 (Supp. 1972), repealed and replaced by the Probate, Estates and Fiduciaries Code, Act of June 30, 1972, §6106, 20 P.S. §6106 (effective July 1, 1972).

interpretation of the will would emasculate ". . . the dispositive intent of the testator."

The use of the word "accrued", in its ordinary usage, evinces testator's intent that the trustee accumulate all income in excess of that necessary to satisfy the specific testamentary legacies.[4] However, our decision does not rest on any lack of distinction between the words "accrued" and "accumulated".

"[T]he decision does not depend in any way upon the technical accuracy or inaccuracy of the use of the word 'accrued' in the trust agreement. We think that the intent of the settlor to make a gift of only some of the net income to the life tenants . . . is sufficiently clear to permit accumulation and ultimate distribution of the balance as principal, and the disposition of principal in later articles of the trust agreement would encompass any capitalized income, whether it was specifically referred to or not. Any inference which could be drawn from the inclusion of the word 'accrued' and the exclusion of 'accumulated' would be too tenuous to counter the clear meaning of the settlor as expressed in article [Third]." *Kessler's Estate,* 47 Pa. D. & C. 2d 73, 82 (O.C. Montgomery, 1968).

Accordingly, we agree with the orphans' court's determination here that, ". . . there is no intestacy . . . and the claim of Susan Girt is . . . without merit."[5]

---

[4] Webster's Third New International Dictionary, G. & C. Merriam Company, Springfield, Mass. 1965, defines "accrue" as "to come by way of increase or addition; arise as a growth or result; to be periodically accumulated in the process of time whether as an increase or decrease."

The Oxford English Dictionary, Oxford, Clarendon Press, 1933, defines "accrued" as "accumulated by growth".

[5] We further note, that had the instant residuary clause been silent as to "accrued and undistributed" income, the result we reach would be the same. The testator's use of the words "all the rest, *residue* and remainder of my estate . . . unto the Toner Institute"

Appellant Rebar Benzie, the sole surviving legatee, also contends that she is entitled to the excess income accumulated by the trustee. Appellant argues that she was the primary object of testator's bounty (although there is nothing in the record to support this claim) and that, therefore, she is entitled to a pro-rata share of the surplus income. Having already determined that excess income is included in the residuary clause, and not available to appellant Girt, so too that income is not available to appellant Benzie. Moreover, our conclusion is further mandated by the fact that testator's bequests to appellant Benzie were definite and subject to no interpretation. Appellant Benzie's claim must be decided adversely to her. It is beyond cavil that the residuary legatee is the sole beneficiary entitled to the excess income.

The remaining issue to be resolved is appellant Benzie's assertion that she is entitled to the income derived from the Mesta Machine Company stock. As the will directs (Article Third (E)), the stock is to be transferred to appellant, *if she survives,* ten years after the testator's death. The ten year period has not yet expired, and will not do so until February 7, 1977.

Although the trustee was specifically directed to retain the Mesta stock as an investment, there was no direction, and none can logically be inferred, that the income derived therefrom be held separately and exclusively for appellant Benzie's benefit. In fact, a reading of the entire will mandates the opposite conclusion —although the stock itself could not be sold, the income derived from it *could be* used as any other income to satisfy the other annuities established by the will.

Such an interpretation is consistent with, and required by, Section 753 of the Fiduciaries Act of 1949,

would have been sufficient to have authorized the trustee to accumulate income, and distribute the same, at the appropriate time, to the residuary legatee.

164

Act of April 18, 1949, P. L. 512, art. VII, §753, 20 P.S. §320.753(e).[6]

"(e) Future date. A legacy payable at a future date, unless earlier set aside as a separate trust, shall not begin to bear interest or income until the date fixed for payment or delivery."

As no separate trust was created for the Mesta stock, and since appellant has not yet fulfilled the condition precedent of surviving for ten years after testator's death, she is not entitled to the income produced by the Mesta stock. See also *Knox's Estate,* 279 Pa. 120, 123 Atl. 670 (1924).

The decree of the orphans' court is affirmed. Appellants, Susan Girt, and Margie Rebar Benzie, and appellee, Toner Institute, each pay own costs. The corporate trustee, Pittsburgh National Bank, is directed to pay its own appeal costs, and counsel fees, without recourse to estate funds.[7]

---

[6] Section 753 of the Fiduciaries Act of 1949 has been repealed and replaced by the Probate, Estates and Fiduciaries Code, Act of June 30, 1972, §3543(e), 20 P.S. §3543(e) (effective July 1, 1972). The statutory provision governing income (interest) under the new Code is essentially identical to its 1949 predecessor.

[7] The professional corporate fiduciary-testamentary trustee-through its counsel, has briefed and argued before this Court its interpretation of decedent's will. The trustee's position is identical to that of the Toner Institute, the residuary legatee. On this record, there is neither need nor reason for the corporate fiduciary to regard itself as having an interest in this appeal that would warrant its additional participation and payment, by the estate, for a separate brief and representation by counsel. The controversy here is between a disinherited daughter, a specific legatee under the will, and the residuary beneficiary—the trustee is not involved.

Clearly the trustee here is not one whose "estate or trust is . . . aggrieved [by a final order or decree of the orphans' court division]." Act of August 10, 1951, P. L. 1163, art. VII, §771, repealed and replaced by the Probate, Estates and Fiduciaries Code, Act of June 30, 1972, §792, 20 P.S. §792. Cf. *Faust Estate,* 364 Pa. 529, 531, 73 A. 2d 369, 370-71 (1950); *Reese's Estate,* 317 Pa. 473, 177 Atl. 792 (1935); *Hand's Estate,* 288 Pa. 569, 136 Atl. 864 (1927).

Mr. Justice POMEROY concurs in the result.

Mr. Chief Justice JONES and Mr. Justice NIX took no part in the consideration or decision of this case.

---

"A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this, there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. Wendt v. Fischer, 243 N.Y. 439, 444, 154 N.E. 303. Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court." *Meinhard v. Salmon*, 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928).

The professional corporate fiduciary, having no estate interest whatsoever in the outcome of this litigation, should not have participated in this appeal, and may not be compensated for such participation or reimbursed for expenditures so incurred, since its actions do not protect, defend or advance the interests of the decedent's estate.

We trust that our present admonition will be observed by fiduciaries to avoid unnecessary litigation costs which do not protect or advance the estate's interests. Our orphans' courts will, of course, be alert to insure that fiduciaries adhere to this standard of conduct.