403 A.2d 978

Trusts of Jonathan HOLDEEN, Settlor.

Appeal of Janet ADAMS and Randal Holden.

Appeal of COMMONWEALTH of Pennsylvania.

Supreme Court of Pennsylvania.

Argued April 19, 1979.

Decided July 5, 1979.

Cuthbert H. Latta, Philadelphia, for appellants.

Daniel B. Michie, Jr., Fell, Spalding, Goff & Rubin, Philadelphia, for appellee Unitarian Universalist Ass'n.

John A. Solis-Cohen, Asst. Atty. Gen., Philadelphia, for Commonwealth.

Cuthbert H. Latta, Philadelphia, for appellees Janet Adams, et al.

Before EAGEN, C. J., and O'BRIEN,˙ ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Jonathan Holdeen believed a system of "cumulative endowments" for government should replace taxation. Under Holdeen's system, governments would "create or receive funds which shall be invested in productive investments and the income of which fund shall be wholly or partly accumulated until the amount of such funds shall be large enough so that the income thereof will pay all governmental expenses." [1] Between 1945 and 1955, Holdeen sought to establish five "cumulative endowments" for the Commonwealth of Pennsylvania. Holdeen placed comparatively modest sums in five inter vivos trusts ranging in duration from 500 to 1000 years. [2] He directed his daughter Janet Adams and son Randal Holden, trustees, to pay a fraction of trust income to the Unitarian Universalist Association (UUA) and accumulate the rest for the lives of the trusts for future charitable use by the Commonwealth of Pennsylvania. For example, in 1945, Holdeen established "Trust 45–10." [3] The deed of trust provides:

"one five hundredths part of the income of said estate, multiplied by the number of years which shall have elapsed since July 5, 1944, shall be deemed 'expendable'

1. Will of Jonathan Holdeen, Record at 44a. Holdeen died in 1967.

2. The record does not reveal the precise amount of principal placed in trust or the amount of income which accumulated over the years. We note that the decree of the orphans' court directs the trustees to file an account of each trust. No appeal has been taken from this portion of the decree.

3. The first two digits of the "number" of the trust corresponds to the last two digits of the year in which Holdeen established the trust. The last two digits refer to the number of the "fund" into which the trustees have pooled the trust.

income. The remainder of the said income shall be accumulated in Pennsylvania and added to the principal until the year 2444 when said principal, including accumulated income, shall be paid to the State of Pennsylvania for educational endowment or other public purposes."

This deed, like each of the deeds establishing Holdeen's "cumulative endowments," further directs the trustees annually to pay "expendable income and all other net income hereunder which is not lawfully subject to accumulation under the terms hereof" to the UUA for specified charitable uses. Holdeen, a lawyer and resident of New York, directed the trustees to administer this and his other "cumulative endowments" in Pennsylvania.[4] The trustees accumulated trust income. As a result, the original sums placed in trust, together with accumulated income, by one estimate reached a value greater than twelve million dollars. The trustees petitioned the Orphans' Court Division of the Court of Common Pleas of Philadelphia for a declaration on the validity of Holdeen's directions to accumulate. See Uniform Declaratory Judgments Act, Act of June 18, 1923, P.L. 840, § 4, 12 P.S. § 834 (1953), renumbered, 42 Pa.C.S.A. § 7535.

The orphans' court, Pawelec, J., relying on *James Estate*, 414 Pa. 80, 199 A.2d 275 (1964), entered a decree declaring invalid, as of the dates Holdeen created the trusts, Holdeen's directions to accumulate income for from 500 to 1000 years. In *James*, this Court adopted " 'the law in practically all of the other states of the union' " and held that provisions for the accumulation of income on behalf of charity are subject to the doctrine of "reasonableness." 414 Pa. at 87, 199 A.2d at 278. Under that doctrine,

"[a]n accumulation of trust income under a charitable trust created in a donative transfer is valid to the extent

---

4. In 1946, 1947, 1954, and 1955, Holdeen attempted to establish four more "cumulative endowments." "Trust 46–10" and "Trust 54–120" are patterned on Trust 45–10. "Trust 47–10" differs from Trust 45–10 only in its duration. Trust 47–10 has a stated duration not of 500, but 1000 years. "Trust 55–10" also resembles Trust 45–10, except Trust 55–10 is to continue for 995 years. ("Expendable income" of Trust 55–10 is defined as 1/1000th of annual income multiplied by the number of years elapsed since 1950.)

the accumulation is reasonable in the light of the purposes, facts and circumstances of the particular trust." Restatement (Second) of Property, Donative Transfers § 2.2(2) (Tent. Draft No. 2, March 15, 1979). Accord, Restatement (Second) of Trusts § 401 Comment k (1959); IV Scott on Trusts § 401.9 (3d ed. 1967) ("[c]learly . . . it would be against public policy to permit accumulation for too long a period, during which period no useful disposition would be made of the property or its income"). *James* held a settlor's direction to accumulate charitable trust income for 400 years "unreasonable and void as being unnecessary, charitably purposeless and contrary to public policy as well as to testator's primary charitable intention." 414 Pa. at 89, 199 A.2d at 279. As the orphans' court held here, "the provisions . . . which require the accumulation of income for periods of 500 and 1000 years and which further provide that a substantial portion of income remain unexpended for many centuries are unreasonable under *James*. . . . [T]hese accumulations are unreasonable, contrary to public policy and void."

There cannot be and, indeed, is not a dispute that the orphans' court's declaration invalidating Holdeen's provisions for accumulations was correct. What is in dispute is the proper disposition of trust income unlawfully accumulated between the dates Holdeen created the trusts and entry of the orphans' court decree. The orphans' court, in accordance with Holdeen's express direction to pay "all other net income hereunder which is not lawfully subject to accumulation" to the UUA, instructed the trustees to pay all accumulated income to the UUA. In directing disposition of unlawfully accumulated income in harmony with Holdeen's express wishes, the orphans' court observed:

"[t]he Commonwealth has no inherent right to receive any principal or income from these trusts. All of the Commonwealth's right to receive accumulated income is conditioned upon the validity of the accumulation provisions. Since these provisions have been declared invalid, and since the settlor has, in fact, expressed his intent as to

alternative distribution, the claim of the Commonwealth must fail."

On its appeal, the Commonwealth disputes the UUA's entitlement to all unlawful accumulations. We hold the orphans' court properly directed disposition of unlawful accumulations in accordance with Holdeen's express direction.[5]

The remaining controversy between the Commonwealth and UUA does not bear upon the validity of Holdeen's long-term trusts. Nor is there any challenge to UUA's entitlement to all future trust income, including income "not lawfully subject to accumulation." Rather, the issue the Commonwealth presents is whether the orphans' court erred by ruling the accumulation provisions invalid as of the date Holdeen created the trusts. The Commonwealth's position is that the orphans' court may declare the accumulation provisions invalid "prospectively" only.

5. The trustees also appeal from the decree of the orphans' court. They too, however, "do not go so far as to say that the trusts should be allowed to accumulate income for their full terms as prescribed by Mr. Holdeen." Brief for Trustees at 22. Rather, they suggest the proper remedy is merely "to prune his scheme, not to uproot it." Id. We agree with the UUA that the trustees are without standing to appeal. The trustees' present position defeats any possible claim that the 500 to 1000 year accumulation provisions are material to the trusts. The trustees' appeal from the decree invalidating Holdeen's accumulation schemes cannot reflect even a general desire to effectuate settlor's expressed intent. Rather, the trustees manifest an interest only in maintaining the trusts. This Court has expressly held that a mere interest in maintaining the trusts will not support an appeal by a trustee. See *Musser Estate,* 341 Pa. 1, 17 A.2d 411 (1941). The decree in no respect imposes charges or other obligations which may otherwise confer standing on the trustees. See 20 Pa.C.S.A. § 792; *Karahuta Estate,* 481 Pa. 512, 393 A.2d 22 (1978); *Hain's Estate,* 464 Pa. 349, 346 A.2d 774 (1975). The trustees' appeal must be quashed.

We note the trustees additionally agree with UUA in the dispute over disposition of unlawful accumulations. This does not alter our conclusion that the trustees' appeal must be quashed. "A trustee has no right to take sides as between the life tenants and remaindermen." *Thompson's Estate,* 262 Pa. 278, 281, 105 A. 273, 274 (1918). Indeed, in *Girt Estate,* 452 Pa. 156, 165 n. 7, 305 A.2d 372, 378 n. 7 (1973), this Court held that a corporate fiduciary should not appeal where its position, as here, merely duplicates the position of the party in whose favor the orphans' court ruled.

We conclude that the orphans' court's declaration invalidating the accumulation provisions as of inception of the trusts is proper. The mere fact that the adjudication of invalidity comes years after existence of circumstances justifying termination is simply the result of the failure of an interested party to bring the matter before the court. That failure, however, does not make an otherwise invalid accumulation somehow permissible. In *James Estate,* supra, this Court expressly held an adjudication of invalidity need await only the existence of circumstances making invalidity "readily apparent." 414 Pa. at 85, 199 A.2d at 277. As Judge Pawalec fully explained here, "[a]n accumulation scheme cannot 'become' unreasonable in duration; its duration either is or is not reasonable per se." It follows from *James* that just as a court can anticipate the inevitable unlawfulness of a provision for accumulation, so too the court may declare the provision invalid as of the time invalidity was "readily apparent." The Commonwealth does not claim that UUA, to the Commonwealth's prejudice, caused postponement of the court's declaration of invalidity and accompanying instructions concerning unlawful accumulations. Compare e. g., *Rose v. Rose,* 385 Pa. 427, 123 A.2d 693 (1956) (laches argued as defense in proceedings for declaratory relief). The Commonwealth's contention that the orphans' court improperly adjudged the accumulation provisions invalid as of the time Holdeen created the trusts must be rejected.

The Commonwealth further suggests that, "at the very least," Holdeen's schemes for the accumulation of income should be sustained until Holdeen's death in 1967. Underlying the Commonwealth's contention is the assumption that the Holdeen charitable accumulation schemes are governed by statutory limitations upon accumulation of income. See Act of April 18, 1853, P.L. 503, § 9; Estates Act of 1947, Act of April 24, 1947, P.L. 100, § 6. *James* made clear, however, that judicial inquiry into the reasonableness of charitable accumulations is of common law dimension. See *James,* 414 Pa. at 90, 199 A.2d at 280 (disposition of released income

guided but not governed by Estates Act of 1947). Though *James* scrutinized provisions for accumulation contained in a testamentary charitable trust, its common law principle of judicial intervention once invalidity is "readily apparent," *James,* 414 Pa. at 85, 199 A.2d at 277, supports the orphans' court declaration of invalidity from inception of the trusts. Accord, Restatement (Second) of Property, Donative Transfers §§ 2.2(1) & 2.2(2) (Tent. Draft No. 2, March 15, 1979) (accumulation provisions of non-charitable trusts to be measured with reference to rule against perpetuities; charitable trusts subject to standard of reasonableness "in the light of the purposes, facts and circumstances of the particular trust"). This claim of the Commonwealth, too, must be rejected.

Finally, despite Holdeen's express alternative direction to pay unlawful accumulations of income to UUA, the Commonwealth reads *James* to require automatic payment to the charitable beneficiary on whose behalf the unlawful accumulations were directed. Nothing in *James* would justify disturbing Holdeen's express direction. It is true that in *James* this Court fashioned the relief of income payments on a current basis to the single beneficiary on whose behalf the settlor directed accumulation. *James* did so, however, solely because this relief most closely effectuated the settlor's overall charitable plan. 414 Pa. at 90–91, 199 A.2d at 279–80. Here, Holdeen's charitable plan is clearly stated. His primary goal, of course, was to prove to governments of the world the viability of "cumulative endowments." Indeed, he selected Pennsylvania, rather than his home state, as the forum for his experiment in the hope of obtaining more ready judicial sanction of his primary plan. But Holdeen realistically recognized the possibility that his experiment would not be favorably received and planned accordingly. He expressly directed payment of income "not lawfully subject to accumulation" to the UUA. The Commonwealth now respects Holdeen's expressly manifested alternative charitable plan and does not claim future trust income. We are offered no persuasive reason why Holdeen's

express alternative plan should not be given full effect. The orphans' court did so and our review satisfies us that determination should not be disturbed.

Appeal quashed at No. 775 January Term, 1977. Decree affirmed at No. 804 January Term, 1977. Each party pay own costs.